STEVEN JOHN BRADLEY v.
STANLEY BRUCE SHAW AND ANOTHER.

244 N. W. 2d 666.

July 30, 1976—No. 45800.

*MacDonald, Munger & Fillenworth* and *Harry L. Munger,* for appellant.

*Donovan, McCarthy, Crassweller, Larson, Barnes & Magie* and *Charles T. Barnes,* for respondents.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

Plaintiff, Steven John Bradley, brought this action for damages incurred in an automobile accident. The jury found for defendant. Plaintiff appeals from the judgment and from a denial of his motion for a new trial or judgment notwithstanding the verdict.

The action arises out of a two car collision at the intersection of 21st Avenue East and Superior Street in the city of Duluth at 10:45 p. m. on October 5, 1972. The intersection was lighted and the traffic flow was controlled by traffic lights. At the time of the accident the streets were wet and it had drizzled during the evening. Plaintiff was traveling west on Superior Street driving a 1967 Opel Kadet, and defendant Stanley B. Shaw was traveling north on 21st Avenue East in a 1971 Plymouth. Plaintiff testified that his car was in good running condition, although he admitted that his low beams only allowed him to see 45 to 55 feet in front of the car. Plaintiff further testified that he was traveling 30 miles per hour and had the green light when he entered the intersection of 21st Avenue East and Superior Street. In the intersection, plaintiff's automobile collided with the auto-

mobile driven by defendant Shaw and occupied by his passenger, Patty Grady. Plaintiff was rendered unconscious by the collision. When Duluth police officer Clarence Schmidt arrived at the scene of the accident, Patty Grady informed him that she was the driver of the 1971 Plymouth and told him her version of the accident. Essentially she told Schmidt that she had the green light and that plaintiff was traveling about 45 miles per hour at the time of the collision.

Approximately a week after the accident, Patty Grady and defendant Shaw informed the Duluth police that Shaw, and not Patty Grady, was the driver of the Plymouth at the time of the accident. Patty Grady testified that the reason she had originally said she was the driver was because it was her father's car and she was afraid of his reaction.[1]

At trial, Officer Schmidt was called by defendant and allowed to testify to the version of the accident which Patty Grady had told him at the time of the accident. Schmidt was the last witness and the trial was delayed approximately one hour so that the jury could hear his testimony.

The jury found that plaintiff was negligent and that such negligence was the direct cause of the accident. The jury also found that defendant Shaw was not negligent. In his motion for a new trial, plaintiff submitted alleged newly discovered evidence by way of an affidavit. This new evidence consisted of a conversation overheard by plaintiff's affiant which raised questions about the veracity of some aspects of defendant's testimony at trial.

The trial court denied plaintiff's motion for a new trial and this appeal followed.

■ The principal issue is whether the trial court erred by allowing Officer Schmidt to testify as to what Patty Grady, who was a witness for defendant, told the police officer at the scene of the accident. The trial court allowed Schmidt, who had been

---

[1] Defendant John Grady, the owner of the car, was not involved in the accident. For convenience, we refer to the defendants in the singular.

called by defendant, to testify that Grady told him that she had the green light, that she had applied her brakes, that the plaintiff ran the red light, and that plaintiff was traveling 45 miles per hour at the time of the accident. While it is unclear on what grounds the trial court allowed this testimony, there is some indication in the record from a discussion in chambers among the trial court and counsel that the court may have considered it admissible under the "official records" exception to the hearsay rule inasmuch as the comments of Grady were included in the police report. It is clear, however, that this type of self-serving testimony does not qualify under that exception to the hearsay rule. In Fairmont v. Sjostrom, 280 Minn. 87, 93, 157 N. W. 2d 849, 853 (1968) this court stated the rule:

"* * * If the informant to the person who makes the record entry is under no duty to anyone to make a truthful account of the facts thus recorded, the record will not be admissible as proof of such facts * * *."

In the instant case, the informant, Patty Grady, was under no duty to make a truthful account of the facts of the accident. Indeed, as a participant in the accident, and while riding in her father's car, it was unquestionably in her self interest to tell Officer Schmidt a version of the accident most favorable to defendant's position. The testimony was not presented as part of the res gestae, or for purposes of impeachment, or as an admission, and it appears that there was no other need for Schmidt's testimony since Patty Grady was a witness herself. In short this testimony was self-serving hearsay.

Defendant argues, and the trial court's memorandum agrees, that Schmidt's testimony was admissible on the theory that it tended to prove Patty Grady's credibility, which had been attacked in this case. While such a theory may negate the hearsay nature of the testimony, it does not render it admissible. Defendant cites State v. Lasley, 306 Minn. 224, 236 N. W. 2d 604 (1975) as supporting its contention that Schmidt's testimony

was admissible. In Lasley, police officers were permitted to testify to conversations with a crime victim in which the victim identified his assailant. We stated:

"* * * We are of the opinion that it is always competent to show that a victim consistently identified the person charged with the crime under circumstances where the person making the identification is a witness at the trial, under oath, and subject to cross-examination." 306 Minn. 228, 236 N. W. 2d 607.

This policy allowing evidence of consistency of identification in criminal cases is totally inapplicable to the situation in this case. A victim of a crime has no obvious reason for falsifying the identification of his assailant, whereas a party involved in an automobile accident has an obvious self interest in attributing the blame for the accident to the other driver. Moreover, to allow a party in a civil action to introduce previous self-serving statements through impressive witnesses under the guise that it shows a consistency in position would open the door to abuse. Therefore, the trial court erred when it allowed Officer Schmidt to testify as to what Patty Grady told him regarding how the accident occurred. In view of the entire record, including the circumstances surrounding Officer Schmidt's testimony, the alleged newly discovered evidence, and the overall closeness of the case, we conclude that the interest of justice is best served by requiring a new trial. We hold that the error was prejudicial and that a new trial is required.

■ At trial plaintiff testified that the low beams of his headlights allowed him to see 45 to 55 feet in front of his car. Minn. St. 169.60 requires that the low beams of a motor vehicle light up the road at least 100 feet. In its instructions to the jury, the trial court stated:

"In this connection, you must also consider whether or not a violation of the traffic regulation, if you find one exists, is the direct cause of the accident. Please do not infer that I am at-

tempting to point out to you what your decision should be from the fact that I read these traffic regulations to you."

The trial court then proceeded to read a number of traffic regulations including Minn. St. 169.60. Plaintiff complains it was error for the trial court to do so because it was not clearly established that plaintiff's low beams failed to comply with the statute and that even if there was a violation it did not cause the accident.

Whether or not the plaintiff violated this statute, and whether or not such a violation was a cause of the accident, are clearly questions for the jury to determine. The trial court did not in any way suggest that plaintiff was in violation of the statute or that such a violation was the cause of the accident. We hold that, under the circumstances, it was not error for the trial court to submit Minn. St. 169.60 to the jury.

In view of our decision to grant a new trial, it is not necessary for us to decide if the trial court erred in refusing to grant plaintiff a new trial based upon the alleged newly discovered evidence.

Reversed and remanded for a new trial.