**Steven THURMAN, a minor, by James B. Thurman, his father and natural guardian, and James B. Thurman, individually, Appellants,**

v.

**PEPSI–COLA BOTTLING COMPANY of Minneapolis and St. Paul, Respondent,**

**Owens-Illinois, Inc., Respondent,**

**Merlin Olson, individually and d.b.a. Paul and Larry's Country Boy Market, Respondent.**

Nos. 49680, 49815.

Supreme Court of Minnesota.

Jan. 18, 1980.

Meshbesher, Singer & Spence and John P. Clifford, Minneapolis, for appellants.

Lommen, Cole & Stageberg, Phillip A. Cole, and Robert M. Schommer, Minneapolis, for Pepsi-Cola Bottling Co. of Minneapolis and St. Paul.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, James B. Vessey, and Steven Wolgamot, Minneapolis, for Owens-Illinois, Inc.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and O. C. Adamson, II, Minneapolis, for Olson, et al.

Heard before ROGOSHESKE, PETERSON and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

In this personal injury action claiming damages from an alleged soda pop bottle explosion, the jury found for the defendants. Plaintiffs appealed from that judgment and also from the trial court's order denying plaintiffs' motion for new trial.[1]

We reverse and remand for a new trial on the issue of liability alone.

The issues raised on this appeal are:

1. Was the admission of the investigating police officer's statement that the ambulance attendant told him that Steven Thurman said he fell and dropped the bottle reversible error?

2. Was the exclusion of the ambulance attendant's statement about what the investigating police officer told him concerning the cause of the accident reversible error?

It is undisputed that on Sunday morning, March 10, 1974, Steven Thurman, then 8 years old, went to defendant Paul and Larry's Country Boy Market to buy a bottle of Pepsi-Cola. Steven picked up a 48-ounce bottle of Pepsi, started towards the cashier, and then the bottle broke. A fragment of glass lodged in his left eye, causing the evisceration of the eye's contents. Steven now wears a glass eye on the left and suffers sympathetic opthalmia (*i.e.*, the

---

1. The appeal from this order was technically one day late, but this court allowed the appeal due to extenuating circumstances and consolidated the two appeals.

good eye becomes diseased in sympathy with the damaged eye) in the right eye, including photophobia and a cataract. In a special verdict, the jury found that plaintiffs suffered $200,000 damages, and that finding has not been appealed.

The dispute in this case centers around how the Pepsi bottle broke. Steven testified that the bottle exploded, and there were no other eye witnesses. Steven testified he was walking towards the cashier, heard a fizz and looked down but kept walking, heard a pop or bang, and then fell backwards as the bottle exploded. Steven stated that he neither dropped the bottle before it broke nor tripped and fell down with it in his hands. The explosion theory is supported by the testimony of the only other patron in the store, George Crockett, who said he heard an explosion or popping sound followed by a scattering of glass.

The defendants claim that Steven dropped the bottle, causing it to break. That theory is supported by the testimony of the cashier, Wanda Gudmonson, that she heard a thud which sounded like the noise made by bottles previously dropped at the market. It is also supported by the deposition testimony of Douglas Holman, the ambulance attendant who accompanied Steven to the hospital after the accident.[2] Mr. Holman stated that Steven admitted he had dropped the bottle. Mr. Holman also remembered someone saying that the bottle exploded, but he could not remember if Steven or someone else said it.

The record in this case also contained a great deal of expert testimony. The plaintiffs' expert, Dr. William Gerberich, has a sub-specialty in fracture mechanics but has worked primarily with metals rather than glass. Upon examining the fragments of the Pepsi bottle, Dr. Gerberich found that the exact area of the fracture origin was missing. He estimated that the origin was about 25% of the way down from the top of the bottle in the neck region. The glass nearest the origin was only half as thick as the glass in the bottle neck directly opposite the origin. Dr. Gerberich also found two silicon particles in a fragment near the origin. He hypothesized that if a similar particle had existed at the origin, it could have caused the bottle to fail from slow crack growth. Based on Steven's testimony, it was Dr. Gerberich's opinion that a slowly growing crack spontaneously erupted the bottle. If Steven's testimony is disregarded, however, Dr. Gerberich testified there are two equally probable scientific causes for the break: slow crack growth and external impact.

The defendants' experts agreed with Dr. Gerberich that the fracture origin was in the neck region of the bottle. They disagreed with him as to the cause of the fracture, however. The expert for defendant Pepsi-Cola, VanDerck Frechette, is a professor of ceramic science. He testified that the fracture pattern of the Pepsi bottle could only be caused by an external impact. The expert for defendant Owens-Illinois, the manufacturer of the Pepsi bottle, was Dr. Ronald V. Caporali, an independent consultant in glass science and glass fracture analysis. He has tested numerous bottles and brought with him two bottles in particular: one broken by external impact and one by internal pressure. He showed the jury that the fracture pattern of the subject Pepsi bottle was very similar to that of the bottle broken by external impact. Dr. Caporali could not find the silicon particles found by Dr. Gerberich. Dr. Caporali concluded that the Pepsi bottle was broken by external impact.

It is apparent that the jurors were impressed by Dr. Caporali's testimony, as they started asking him questions, and during their deliberations, forwarded a question about Caporali's testimony to the judge. In a special verdict, the jury found that the bottle did not break from slow crack growth.

It is against this background of evidence that the two alleged evidentiary errors

---

**2.** Mr. Holman died in the interim between the taking of his deposition and trial and was therefore unavailable to testify at trial.

must be assessed. First, plaintiffs claim prejudicial error from the admission of the following testimony elicited on cross-examination of their first witness, the investigating police officer, James Jess:

Q. You later spoke with Doug Holman, is that correct?

A. Yes, sir, I did.

Q. And he had also found out from Steven what happened at the time of the accident, or the bottle broke, is that right?

A. Yes, sir.

Q. And what did Holman tell you?

MR. MILLER: I'm going to object to that as being hearsay, Your Honor.

THE COURT: Overruled.

A. According to my medical report I talked to the attendant, Doug Holman, and he said that on the way in Steven Thurman said that the bottle fell and broke.

Q. So actually your note said that Steven said he fell and the bottle broke?

A. I'm sorry, that's correct.

Q. Is that what your note says?

A. Yes.

Q. So Holman related to you that Steven had explained that he, Steven, had fallen and the bottle had broken, is that right?

A. That is what my notes indicate, yes, sir.

Q. And, of course, you are relying upon the notes to refresh your recollection? Those notes were taken down for necessity of making an incident report for your department, is that right?

A. Yes, sir.

Secondly, plaintiffs claim prejudicial error from the exclusion of the following testimony when Douglas Holman's deposition was read to the jury:

Q. Did Officer Jess inform you as to what happened?

A. He wasn't definitely sure himself. There was something about a pop bottle dropping, and this is where my memory gets a little vague. I remember that there was something said about the bottle

exploding, but I don't know if it was by Jess or the boy himself when Rick and I were in back trying to calm him down before we left the scene. I find it real hard to remember definitely.

■ 1. The police officer's statement that the ambulance attendant told him that Steven said he fell and dropped the bottle can be broken down into three integral parts. Part one, the statement by Steven to Douglas Holman, the ambulance attendant, is not hearsay because it is an admission by a party-opponent. Minn.R.Evid. 801(d)(2)(A). Part three, Officer Jess' statement itself, was made on the witness stand and subject to cross-examination. Part two, however, is the out-of-court statement by the ambulance attendant to the police officer. That portion of the testimony is hearsay and inadmissible unless it falls under an exception to the hearsay rule. Minn.R.Evid. 801(c), 802.

a. The defendants-respondents assert that the doctrine of curative admissibility renders the police officer's statement admissible. The elements necessary for curative admissibility are clearly set out in *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377, 387 (Minn.1977):

> In order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) the original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence.

The first step, then, is to find some inadmissible and prejudicial "original evidence." Defendant Pepsi-Cola, in a portion of its post-trial memorandum quoted by the trial court, stated that plaintiffs' counsel had asked Officer Jess what Mr. Crockett (the patron) and Ms. Gudmonson (the cashier) said to him. This is erroneous; the trial transcript does not contain any such questions. Plaintiffs' counsel did ask what Steven Thurman said to Officer Jess. Although Steven's statement to the officer is not an admission when offered in his favor,

it is admissible as an excited utterance. Minn.R.Evid. 803(2). Officer Jess arrived just a few minutes after the accident, and Steven had his eyes covered by bandages, complained of being extremely warm, and was trembling.

■ The only possible "original evidence" here was the response of Officer Jess to questioning about any conversations he had with James Thurman, Steven's father. Officer Jess stated that:

> Mr. Thurman asked me what happened, and I explained to him as best I could the nature of the injury and asked if he would like to accompany his son down to the hospital.

Although this passage contains hearsay, it is not at all prejudicial. Further, it is irrelevant on the issue of how the bottle broke and would not satisfy step (c) of the *Busch* analysis. Therefore, the doctrine of curative admissibility did not apply as of right. If it applies to this case at all, it would be more applicable to plaintiffs' claim that the second statement by Holman should have been allowed, discussed *infra*.

When the original evidence is admissible or non-prejudicial, the issue is addressed to the trial court's discretion. *Busch v. Busch Construction, Inc.*, 262 N.W.2d at 387. However, admitting the statement in question to rebut either Steven's admissible statement that the bottle broke or the inadmissible, but non-prejudicial, testimony concerning conversations with James Thurman was an abuse of discretion.

b. The defendants-respondents next contend that the statement in question was not hearsay because it was a prior consistent statement under Minn.R.Evid. 801(d)(1)(B):

> A statement is not hearsay if—
>
> (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive * * *.

Douglas Holman stated in his deposition that Steven admitted dropping the bottle, and plaintiffs' counsel cross-examined him as to the accuracy of his memory concerning that admission. Therefore, defendants argue, Officer Jess' testimony was admissible to show Mr. Holman made a prior consistent statement about Steven's admission.

■ Rule 801(d)(1)(B) states that prior consistent statements can only be used *to rebut* an express or implied charge. This implies that impeachment of the witness is a condition precedent to admission of a prior consistent statement. 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(1)(B)[01] (1979); *U. S. v. Strand,* 574 F.2d 993, 996–97 n. 4 (9th Cir. 1978). In this case, the Holman deposition was not read to the jury until late in the trial. When Officer Jess testified as plaintiffs' first witness, there was nothing before the jury to rebut. The trial judge recognized this difficulty in his post-trial memorandum but explained that, on the basis of pretrial discussion with counsel, he knew the content of the Holman deposition and felt it would be more convenient to let Jess testify once rather than call him again later. Judicial economy might justify the early admission of a prior consistent statement under different circumstances, but not here where Officer Jess was the first witness and his statement went directly to the issue of liability.[3]

c. Since we hold that the police officer's statement was inadmissible hearsay, the next issue is whether or not its admission was prejudicial. If one considered only the non-expert testimony, the statement would clearly be prejudicial. The statement was given by a police officer who used his incident report to refresh his recollection. This court has recognized that police officers are

---

**3.** Another difficulty with the defendants' argument is that plaintiffs' cross-examination of Holman probing the accuracy of his memory may not be tantamount to an express or implied charge of recent fabrication. However, we need not reach this issue, having rejected the argument on other grounds.

impressive witnesses whose testimony may have great impact on the jury. *Bradley v. Shaw,* 309 Minn. 442, 244 N.W.2d 666 (1976); *Montagne v. Stenvold,* 276 Minn. 547, 148 N.W.2d 815 (1967). The fact that Officer Jess was plaintiffs' first witness heightens the danger of prejudice. Although Douglas Holman also testified to Steven's admission, he did so much later in the trial, and he did not say that Steven fell with the bottle. The statement at issue could well have been the key factor for the jury in deciding whether to give more weight to the Holman-Gudmonson testimony or the Crockett-Steven Thurman line of testimony.

The difficulty in this case arises when one considers the expert testimony. The defendants' experts were highly qualified, positive about their findings, and obviously influential on the jury. Still, the jury could have believed the plaintiffs' expert, and Steven's testimony was crucial to his conclusion. Therefore, the statement at issue undoubtedly played a role in the jury's assessment of plaintiffs' expert testimony. Even considering the strength of defendants' expert testimony, it is highly likely this statement was prejudicial.

■ 2. When a deposition is received as evidence in a trial, objections may be made for any reason which would require the exclusion of evidence if the witness were then present and testifying. Minn.R.Civ.P. 32.02. A hearsay objection was made to the second portion of testimony quoted *supra,* and the trial court sustained it. The testimony, Mr. Holman's statement of what Officer Jess informed him as to what happened, is obvious hearsay.

Plaintiffs argue, however, that the passage should have been admitted under the curative admissibility doctrine. *Busch v. Busch Construction, Inc.,* 262 N.W.2d 377 (Minn.1977). Since Officer Jess' statement was inadmissible and prejudicial hearsay, step (a) of the *Busch* analysis is fulfilled. The second statement, that of Holman, was similarly inadmissible hearsay as required by step (b) in *Busch.* The second statement also appears to us to be limited to the same

evidentiary fact as the original inadmissible evidence; namely, what was said about how the bottle broke. Therefore, all three steps of the *Busch* analysis are satisfied. It was prejudicial error to admit Officer Jess' statement in the first instance, but this error was compounded when the rebuttal statement of Holman was held inadmissible.

Since the issue of damages was fully litigated on the first trial, retrial on the issue of damages is unnecessary.

The case is reversed and remanded for a new trial on the issue of liability alone applying the holdings in this case.