## RUDOLPH C. GEBHARD v. FRANK NIEDZWIECKI.
## FRANK NIEDZWIECKI v. RUDOLPH C. GEBHARD.

122 N. W. (2d) 110.

June 7, 1963—No. 37,779.

472

*Phillip J. Klein, Janes & Elliott,* and *Hansen, Hazen & Lynch,* for Gebhard.

*Murnane, Murnane, Battis & deLambert,* for Niedzwiecki.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying a motion for a new trial.

Five separate actions were commenced to recover for the alleged injuries and property damage of a number of persons involved in a three-car collision which occurred on October 18, 1957, at about 6 p. m., on a hill on State Trunk Highway No. 36 approximately 1 mile west of its intersection with U. S. Highway No. 212. At this point, Highway No. 36 runs approximately east and west. Frank Niedzwiecki testified that he started from Bayport and was driving his Cadillac automobile in a westerly direction on Highway No. 36. He was followed some distance to the rear by Lee W. Crittenden, driving his Ford automobile. Rudolph C. Gebhard was driving his Chevrolet automobile in the opposite or easterly direction. The Gebhard car and the Niedzwiecki car collided first, and then the Gebhard car and the Crittenden car crashed head on. After the collision, the Niedzwiecki Cadillac wound up facing in a westerly direction near or against some guard posts and a cable which flanked the road on the north side. The Crittenden car wound up on the north half of the highway also, with the rear bumper over the guard cable, facing somewhat in a southwesterly direction. The Gebhard car wound up on the opposite side of the highway, with its front on the shoulder, facing also in a southwesterly direction. So much of the evidence is not seriously in dispute except to the extent hereinafter mentioned. Of the drivers of the three cars, Niedzwiecki was the only one who was able to testify as to what happened. The other drivers and most of the occupants of the cars suffered amnesia or for some other reason could not state how the accident happened.

Several actions were commenced as the result of this collision. Niedzwiecki brought an action against Gebhard to recover for his personal injuries and property damage. Gebhard brought a similar action against Niedzwiecki. Lee W. Crittenden and his wife Shirley and son Patrick, who were passengers in his car, sued Gebhard and Niedzwiecki to recover for their damages. William C. Crittenden sued for death by wrongful act as trustee for the heirs at law of Sarah Ludy Crittenden, who was also a passenger in the Crittenden car, and who died as a result of injuries received in the collision. A fifth action was brought by Cora

Eckl, who was a passenger in the Gebhard car, against Crittenden, Niedzwiecki, and Gebhard to recover for her personal injuries. The actions were all consolidated for trial.

The jury, on a special verdict, found that Niedzwiecki was guilty of negligence but that his negligence was not a proximate cause. It found Gebhard guilty of negligence which was the proximate cause of the collision and also found the amount of damages each of the parties had suffered in the event they were entitled to recover. Thereafter, Gebhard moved the court for a new trial on the issues of the negligence of Gebhard and Niedzwiecki and proximate cause. The motion was denied by the trial court, and this appeal is taken from that order.

The main thrust of the appeal is directed against an alleged error of the trial court in suppressing the testimony of two individuals, Overt Gunness and Vivian Gunness, who were called by appellant at the very close of the trial.

The trial was commenced on October 14, 1958. On August 4, 1958, the attorneys for Niedzwiecki served upon Gebhard and his attorneys interrogatories under Rule 33, Rules of Civil Procedure, which, among other things, requested the names and addresses of persons having knowledge of relevant facts before or after the collision or who were eyewitnesses to the accident. Interrogatories of similar import were served on Crittenden and his attorneys on the same date. Crittenden never did answer the interrogatories. On October 14, 1958, the date of commencement of the trial, answers were served upon the attorneys for Niedzwiecki by the attorneys for Gebhard. The names of Vivian Gunness and Overt Gunness were not included in such answers. These witnesses were then unknown to Gebhard or his attorneys.

On the day that the trial commenced, one of Crittenden's attorneys learned that Vivian and Overt Gunness, who lived in Wisconsin, might have some information relevant to the happening of the accident. He did not give this information to Niedzwiecki or his attorneys but on the second day of the trial informed the attorneys for Gebhard that such witnesses probably possessed information regarding the happening of the accident. Thereupon Gebhard's attorneys caused an investigation to be made and determined that the Gunnesses could supply some testimony

favorable to them. On Saturday, October 19, one of Gebhard's attorneys and his associate traveled to Wisconsin and interviewed these potential witnesses. On Monday, October 21, without conveying the information he had to Niedzwiecki's attorneys, he called Vivian Gunness as his witness. She testified that she resided on a farm located in the vicinity of Boyceville, Wisconsin, and that she was at the scene of the accident on October 18, 1957. Thereafter a motion was made by the attorneys for Niedzwiecki to suppress the testimony of the witness, and, after a hearing in chambers, the motion was granted on the ground that there had been a violation of the spirit of Rule 33 by Gebhard's attorneys in failing to transmit the information they had concerning these witnesses to Niedzwiecki's counsel. An offer of proof was then made wherein it was stated that Vivian and Overt Gunness, if permitted to testify, would state that on the evening of the accident they were proceeding easterly on Highway No. 36 at a point approximately 4 miles west of the scene of the accident at a rate of 45 to 50 miles per hour when they were overtaken and passed by a Cadillac automobile driven by Niedzwiecki and involved in this collision. The offer stated that they would testify that the Niedzwiecki car passed them on the left side of the highway in a no-passing zone at a speed of 75 to 80 miles per hour. It was indicated that they would identify the automobile by a sign affixed to the bumper of the car. The evidence in the case had previously shown that such sign was affixed to the Niedzwiecki bumper.

The trial court was of the opinion that under Rule 33 the duty to disclose the names and addresses of witnesses in answer to interrogatories such as we have is a continuing one and that failure on the part of Gebhard's attorneys to disclose to Niedzwiecki's attorneys the names of witnesses discovered after answers to interrogatories had been served justified suppression of the evidence that might be elicited from such witnesses.

The main question for determination here is whether under Rule 33 the obligation to disclose information discovered after answers to interrogatories are served is a continuing one and, if so, what are proper sanctions to be imposed in a case of this kind for failure to comply with that duty.

This question is the subject of a very recent annotation in 88 A. L. R. (2d) 657.[1] There appears to be little authority on the subject aside from decisions in Federal cases, and a detailed review of the cases found in the annotation will not be undertaken here.

■ At the outset, it is apparent that the scope of the examination under Rule 33, Rules of Civil Procedure, is the same as under Rule 26.02.[2]

■ With slight modifications, our Rule 33 is the same as the Federal rule.[3]

■ One of the main purposes of Rules 26.02 and 33 is the discovery of facts which will enable litigants to prepare for trial free from the element of surprise which, prior to the adoption of the rules, frequently led to a result based more upon the legal maneuvering of counsel than upon the merits of the case. That being the purpose of the rules, a construction of them that will defeat the purpose for which they were adopted should be avoided if that is possible.[4]

■ It has been held that failure to truthfully answer interrogatories may lead to the suppression of the evidence.[5] That being so, there is no reason why a party should not be under an equal duty to disclose information, acquired after answering an interrogatory, that would render the answer inaccurate, untrue, or incomplete.[6]

It has been suggested that there are alternatives to holding that the

---

[1]See, also, 74 Harv. L. Rev. 961; 42 Iowa L. Rev. 579.

[2]2 Youngquist & Blacik, Minnesota Rules Practice, pp. 23 and 147; Lundin v. Stratmoen, 250 Minn. 555, 85 N. W. (2d) 828.

[3]2 Youngquist & Blacik, Minnesota Rules Practice, p. 146; Louisell, *Discovery and Pre-trial Under the Minnesota Rules,* 36 Minn. L. Rev. 633.

[4]In 2 Youngquist & Blacik, Minnesota Rules Practice, p. 24, we find the following: "The success of these rules as instruments of discovery requires a construction and application of Rule 26.02 in harmony with its purpose."

[5]Evtush v. Hudson Bus Transp. Co. Inc. 7 N. J. 167, 81 A. (2d) 6, 27 A. L. R. (2d) 731; see, Annotation, 27 A. L. R. (2d) 737; Newsum v. Pennsylvania R. Co. (S. D. N. Y. ) 97 F. Supp. 500; Sather v. Lindahl, 43 Wash. (2d) 463, 261 P. (2d) 682; Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc. (Mo. App.) 317 S. W. (2d) 841.

[6]See, Wright, Minnesota Rules, p. 205; Smith v. Acadia Overseas Freighters, Ltd. (E. D. Pa. ) 120 F. Supp. 192.

obligation to disgorge information acquired after interrogatories are answered is a continuing one. The cases have generally held that where the interrogatories contain a demand for continuance the duty to disclose continues.[7]

Similarly, unless the rule or statute provides otherwise,[8] repeated requests could be submitted up to the time of trial.

It should be unnecessary to adopt either of these alternatives. To require a party to submit successive interrogatories up to the time of trial in order to obtain information discovered after the interrogatories were once answered seems a useless and burdensome procedure.[9] Similarly, it should be unnecessary to state in the interrogatories that the request is a continuing one. Having in mind the purpose of the rule, we hold that, where the after-acquired information is of a material nature or where it will render the answers originally given untruthful, unreliable, or inaccurate, the obligation to disclose such after-acquired information continues.

In the frequently cited case of Wolf v. Dickinson (E. D. Pa.) 16 F. R. D. 250, 252, the court said:

"* * * the interrogatories continue to speak and the defendant is obliged to furnish supplemental answers if he obtains additional information between the time answers are filed and the time of trial. * * * The holding, we feel, gives effect to one of the primary purposes of the rules, that of full disclosure before trial of all facts which are relevant to the subject matter or issues of the case and which are not privileged."

In McNally v. Yellow Cab Co. (E. D. Pa.) 16 F. R. D. 460, the court said:

"* * * it may not be out of place for the Court to say at this time

---

[7]See, Annotation, 88 A. L. R. (2d) 665.

[8]California Code of Civil Procedure, § 2030, provides: "No party may serve more than one set of interrogatories to be answered by the same adverse party, except with leave of court obtained on motion after notice." In view of this provision of the California code, it was held in Smith v. Superior Court, 189 Cal. App. (2d) 6, 11 Cal. Rptr. 165, 88 A. L. R. (2d) 650, that a party may not ask for continuing interrogatories without an order of the court.

[9]See, Troutner v. Philadelphia Transp. Co. (Pa.) 5 D. & C. (2d) 545.

what should be obvious, namely, that the defendant is bound to give truthful answers to the interrogatories and that both good faith and the spirit of the Rule require it to see to it that its answers are truthful as of the time of the trial as well as of the time when the interrogatories are answered."

See, also, Armstrong v. Diamond State Bus Lines, Inc. 50 Del. 163, 125 A. (2d) 856.

The application of this rule should not require the disclosure of every bit of information discovered after the answers are served,[10] but should require that any information which is of a substantial nature and which will render the answers theretofore served untruthful, unreliable, or incomplete must be disclosed. Certainly, in a case such as this, the discovery of witnesses that a party intends to call comes within the area of information which must be disclosed.

Appellant relies largely on the New Jersey case of Capone v. Norton, 8 N. J. 54, 83 A. (2d) 710. It is true that New Jersey did hold in that case that under its rule at the time the case was tried, which was similar to ours now, there was no obligation to disclose after-acquired information.[11] The New Jersey rules were later amended so as to specifically require the disclosure of such information. After the New Jersey rules were amended, the court has held otherwise.[12]

The question then arises: What sanctions should be imposed where a party fails to disclose such after-acquired information? Before drastic sanctions are imposed, it should appear that violation of the rule has or will result in prejudice to the party asserting a violation.[13]

In this case the evidence was suppressed. In many cases that is the only effective remedy.[14] The object of sanctions should be to prevent

---

[10]Cf. Novick v. Pennsylvania R. Co. (W. D. Pa.) 18 F. R. D. 296.

[11]See, also, Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N. J. 293, 96 A. (2d) 652.

[12]White Tower Management Corp. v. Erie Main Corp. 28 N. J. Super. 425, 100 A. (2d) 775; Abbatemarco v. Colton, 31 N. J. Super. 181, 106 A. (2d) 12.

[13]Lundin v. Stratmoen, 250 Minn. 555, 85 N. W. (2d) 828; King v. Cardin, 229 Ark. 929, 319 S. W. (2d) 214.

[14]See, 74 Harv. L. Rev. 963.

the party who fails to comply with the rule from profiting by his own violation.[15] In cases where there is an honest mistake and the harm can be undone, it may frequently occur that a continuance or some other remedy would be adequate but, where the violation is willful and the party guilty of the violation seeks to take advantage of it at a time when the harm cannot be undone, suppression of the evidence may very well be the proper and only available remedy.[16] We think that is the situation that prevailed here. The undisclosed witnesses were called at the very close of the case. They were discovered several days before they were called. A weekend had intervened. If the names of the witnesses had been disclosed when they were discovered, both parties would have had the same opportunity to interview them. That the failure to disclose was willful is apparent from the statement made by Gebhard's attorney at the time the matter was discussed with the court, wherein he said:

"In that regard I feel that I have something less than a great deal of faith in Mr. Niedzwiecki's credibility and honesty in this matter. And I didn't want him to have an opportunity to so amend his testimony to make it to so appear to be inconsistent."

It appears that the evidence which was to be elicited from the proposed witnesses is quite incredible. At the trial, no one questioned the fact that Niedzwiecki was going west, and no one now questions the fact that Crittenden was traveling in the same direction. The physical evidence, as well as the testimony of all witnesses who were at or near the scene of the accident at the time it happened, shows quite conclusively that Niedzwiecki was traveling west. The main damage to the Niedzwiecki car was on the left front side, with slight damage on the right rear where it apparently collided with the guard posts and cable. The damage to the Crittenden and Gebhard cars indicated quite conclusively a head-on collision between those two cars. The position of the cars after the accident established that the Niedzwiecki car was going west. So did the skid marks. Practically all the evidence shows that the

---

[15]Branch v. Emery Transp. Co. 53 N. J. Super. 367, 147 A. (2d) 556.
[16]See, Sather v. Lindahl, 43 Wash. (2d) 463, 261 P. (2d) 682; King v. Cardin, 229 Ark. 929, 319 S. W. (2d) 214.

collision occurred on the north half of the highway. If the Niedzwiecki car had been going east and had attempted to pass the Gebhard car, which is the only way they could have come into contact, it would have been impossible for the Gebhard and Crittenden cars to have collided as they did.

If the evidence had been disclosed when discovered, it would have been an easy matter for Niedzwiecki to have established that he left Bayport as he said he did and traveled in a westerly direction. Calling the witnesses as a surprise left Niedzwiecki where he could hardly rebut the evidence properly. Under these circumstances, while the remedy may have been drastic, we believe that there was no abuse of discretion on the part of the trial court in suppressing the evidence.

■ Appellant also assigns a number of errors that require little comment. First of all, he claims that it was error to allow a witness, Paul Slipka, to testify to the location of the vehicles involved at the time of the impact, for the reason that the witness had disqualified himself by his prior testimony that he did not observe the impact. Slipka testified as follows:

"Q. And calling your attention to the other vehicles, the one you say that you did not have a taillight lighted at the time of the accident, where was that automobile with respect to the north or south side of the roadway?

"A. Well, when I got there, it was on the south side of the roadway.

"Q. O, I am not asking you when you got there. I am asking when the accident happened.

"Mr. Lynch [Gebhard's attorney]: If the Court please, I will object to the question in as much as the witness has disqualified himself. He did not see the accident.

"The Court: Do you understand the question?

"The Witness: No, I don't.

"The Court: You may restate the question.

"By Mr. Murnane [Niedzwiecki's attorney]:

"Q. I think that you told us the car that did not have the taillight lighted, turned out into the north side of the road. Now, I am asking you

where it was with respect to the north or the south side of the road just as the accident happened?

"A.   Well, it was across the yellow line going east.

"Q.   And by across the yellow line, which side do you mean, the north or south side?

"A.   It would be partly on the north side and partly on the south side."

Slipka had theretofore testified that he did not actually see the accident. After the original objection noted above, no further objection was made to the question and answer, and it went in without objection. Aside from that, it was clarified by the objecting party's cross-examination, so it is difficult to see how any prejudice resulted. On cross-examination, Slipka testified as follows:

"Q.   * * * Am I correct that you did not see the actual collision?

"A.   No, sir, I didn't see the actual collision.

"Q.   Will you explain to this court and jury how you can explain that the actual accident occurred partly on the north and partly on the south side of Highway 36 then?

"A.   Yes, sir. I came back that way the next morning, and I looked the situation over right where the accident took place and I deducted the fact that the crash took place on the north side because there was more mud on the bottom of the cars from the north side of the road and more gas and everything was on the north side of the line."

We do not believe there was any reversible error because of the admission of this testimony.

■   Appellant next contends that, inasmuch as the jury found Niedzwiecki guilty of negligence, it follows as a matter of law that such negligence was a proximate cause of the collision. The jury undoubtedly concluded that the only negligence attributable to Niedzwiecki was his excessive speed. Inasmuch as the evidence is quite conclusive that the collision occurred on the north half of the highway, where Niedzwiecki had a right to be, the question of proximate cause was clearly one for the jury.[17]

---

[17]See, Simon v. Carroll, 241 Minn. 211, 62 N. W. (2d) 822.

482

■ There was some evidence that the odor of liquor was detected upon the breath of Gebhard. The court instructed the jury:

"It is the law in this state that a person under the influence of intoxicating liquor is required to exercise the same degree of care as a sober person. There is no direct evidence in this case that Mr. Gebhard was intoxicated at the time this accident took place. There is some evidence both direct and circumstantial that some drinking had been done before the accident happened. It is a fact issue for your determination from the evidence before you in passing on the question of negligence of Gebhard whether or not his mind and physical reactions were affected by alcoholic beverage consumed so that it was reflected in the manner in which he operated his automobile at the time so that he did not for that reason exercise the care of a prudent sober person would have exercised under similar circumstances."

The first objection is that there is not sufficient evidence to justify the charge at all. There was evidence that appellant had consumed some beer in the afternoon, and there was testimony that a witness smelled whisky on appellant's breath. The evidence was sufficient to justify the submission of the charge as a general proposition. However, appellant objects to the court's use of the term "prudent sober person" rather than "ordinarily prudent person." The trial court had used the correct language earlier in its charge. It appears that the error, if it was such, is of such minor importance that it could hardly have misled the jury. Throughout its charge the court had referred to the conduct required as that of an ordinarily prudent man. Taking the charge as a whole, we cannot believe that there was any possibility that the jury was misled by the inadvertent use of an improper word.

Affirmed.