ROBERT FREEBURG v. LILLYDALE GRAND CENTRAL CORP., d.b.a. DIAMOND JIM'S.

170 N. W. (2d) 330.

August 22, 1969—No. 41534.

*Irving Nemerov,* for appellant.

*Schermer, Gensler, Borkon & Ramstead,* for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial.

On February 20, 1964, plaintiff fell while descending the front steps of Diamond Jim's, a private night club at which plaintiff was a guest. As a result of the fall plaintiff suffered severe injuries to his left knee which seriously affected his ability to perform the type of work for which he was trained.

Plaintiff brought this action alleging negligence on the part of defendant, Lillydale Grand Central Corporation, doing business as Diamond Jim's, in the maintenance of the entry steps to the night club. From the testimony given at trial it appears that plaintiff had gone with another man and two ladies to the club to celebrate a birthday. He had consumed one and a half or two bottles of beer prior to arriving at the club about 8 p. m. and had four or five mixed drinks while he was there. One of the ladies left the party for some reason, and the rest of the group decided shortly after her departure, to cut their evening short, leaving about 10:30 p. m. It was while they were walking out to their car that plaintiff fell.

The entry at Diamond Jim's consists of a lighted, canopied area where cars are taken from and returned to the guests. There are also several steps; a small enclosed area with doors that open outward, where guests can wait for their cars; and the main door, which opens into the establishment. There are no handrails on the steps and, apparently, the top step is somewhat smaller than the others.

During the course of the trial plaintiff testified that he had visited Diamond Jim's once or twice before; he had had no prior injuries to his left leg; and, with respect to the accident:

"As I went out the door Larry [the other man] was right ahead of me. And my heel or something caught and I fell forward. And I hit him in the shoulder, and my knee—I think it's asphalt [ the ground where he struck his knee]."

On cross-examination, counsel for defendant asked plaintiff, "Come to think of it, didn't you fall down some stairs two or three months before at some other place?" An objection to the question was sustained. At the bench, defendant offered to prove that plaintiff had fallen earlier and that it typified his ability to walk. Objection to the offer of proof was sustained. Defendant then offered to prove that plaintiff had hurt his left leg in the earlier fall, but after examining the hospital records the court rejected this offer of proof also.

During the course of the discussion at the bench plaintiff's counsel moved for a mistrial, complaining that defense counsel was speaking in a manner audible to the jury. The motion was denied. Upon the resumption of testimony defense counsel asked plaintiff, "Ever have crutches and go about on crutches before this accident?" An objection on the grounds of immateriality was sustained. Plaintiff was then asked, "Calling your attention to the latter portion of 1962 or early portion of 1963, were you on crutches?" Again an objection was sustained.

Defense counsel also referred to a deposition taken from plaintiff, and read several questions and answers into the record, including the following:

"* * * Question: Did you see anything wrong with the steps at any time?

\* \* \* \* \*

"Answer: No, I wouldn't—I would say no on that."

Objection to the question on the ground it called for a legal conclusion was overruled. This question, in essentially the same form, was repeated three times in the deposition, with answers ranging from "I don't know" to "No," and they were all read into the record over continued objections. This testimony was then used by defense counsel in his closing argument to the jury.

Immediately after selection of the jury plaintiff had informed defendant that he intended to call a consulting engineer as an expert witness. He had given no previous indication of this intent. In accordance with the court's instruction, the next day defendant was provided with a condensed statement of the expected testimony. Plaintiff also stated that the expert would be available for deposition if defendant wished and that any privilege, including that based on work product, was waived. The defense objected to the expert witness on the grounds that the notice was untimely and that the condensed statement indicated the expert would testify to matters within the ability of the jury to determine without the aid of expert opinion. The court sustained the objection on both grounds and refused to allow plaintiff to call the expert.

The jury returned a verdict in favor of defendant. On appeal from the order denying his post-trial motion, plaintiff seeks a new trial. He raises three issues: (1) Whether statements of plaintiff as to whether there was anything "wrong" with the steps should have been admitted; (2) whether the questions of defense counsel as to past injuries of plaintiff were sufficiently prejudicial as to require a new trial; and (3) whether the objection to testimony by plaintiff's expert was properly sustained on either ground advanced by defense counsel.

■ Plaintiff contends that the questions on whether he saw anything "wrong" with the steps were improper as calling for an opinion and a legal conclusion by a lay witness. Defendant, on the other hand, contends that inasmuch as plaintiff's answer in the deposition contradicts his position at the trial that the steps were either defective or negligently maintained, the questions and answers were admissible as an admission against interest and to impeach plaintiff.

The difficulty with plaintiff's argument is that it disregards the form of the question. Plaintiff was not asked whether there *was* anything wrong with the steps, but, rather, whether he *saw or noticed* anything wrong with them at any time, and he

answered "No." It would seem that the only issue on which questions in that form could have any direct bearing is contributory negligence, which was alleged by defendant. As to that issue, plaintiff's answers are in his favor since they indicate that, as to him at least, the defects, if there were any, were hidden. Any adverse effect the questions might have had on plaintiff's case could have been corrected on redirect and even in closing argument by pointing out that they went only to what plaintiff saw, not to whether there was in fact anything wrong with the steps.

We conclude, therefore, that there was no prejudice to plaintiff that would justify a new trial even if it is assumed that the evidence was improperly admitted. As we have pointed out, any possible misunderstanding on the part of the jury could easily have been corrected by plaintiff's counsel, and it is far from clear that such misunderstanding occurred.

■ The question of whether misconduct of counsel justifies a new trial is, as plaintiff concedes, generally left to the sound discretion of the trial court. Rom v. Calhoun, 227 Minn. 143, 34 N. W. (2d) 359. We think it clear on the record before us that there was no abuse of discretion in this case, although the conduct of counsel for defendant certainly is not to be recommended.

Since there is no way to determine from the printed record whether the offer of proof was overheard by the jury, we must rely on the determination of the trial court on this point. As to the questions concerning the condition of plaintiff's leg, it must be noted that the matter was initially raised by plaintiff. He was asked on direct examination if he had ever injured the leg before and he responded that he had not. Therefore, some inquiry into past injuries would be permissible for impeachment purposes. Furthermore, any possible prejudice to plaintiff from inquiries into past accidents affecting his leg would be on the issue of damages, which the jury obviously never reached.

■ Rule 28L of the Special Rules of Practice of the Fourth Judicial District, where this case was tried, sets out the rule as

to pretrial conferences, including the duty of counsel to provide the court and the opposing party with a list of all prospective witnesses. Paragraph VII of that rule states in part:

"* * * Witnesses not named or exhibits not identified in the statements of the case or during the pre-trial or settlement conference shall not be presented at the trial except to prevent manifest injustice, unless the need for or identity of such witness or exhibit is ascertained subsequent to the pre-trial or settlement conference. In the latter event, opposing counsel and the Court shall be *notified immediately*."

In the present case there is no claim that the need for or identity of the witness was not ascertained before the pretrial conference. Therefore, under this rule, plaintiff's expert could be allowed to testify only if it was necessary to prevent manifest injustice.

Although exclusion of evidence is a drastic remedy, it seems clear that this is an area in which the trial judge is accorded discretion and his decision will be reversed only for an abuse of that discretion. Gebhard v. Niedzwiecki, 265 Minn. 471, 122 N. W. (2d) 110. This is particularly true where the court's action is based on a special rule of the judicial district in which the case was tried.

Unlike the situation in the cases cited by the parties, the witness excluded in the present case was an expert. This distinction raises several considerations not present where a fact witness is involved. First, no amount of investigation would have revealed to defendant the existence of this witness or the nature of his testimony. The witness had no connection with the facts of the case and his identity was wholly a matter of choice on the part of plaintiff, as was the decision to use an expert at all. Second, prior to the selection of the jury, plaintiff had given no indication that he intended to call any expert witnesses other than the treating doctors. It is well known that an expert witness who is well qualified in his field can have a significant effect on a jury. It is equally well known that experts of similar

qualification in the same field may have different opinions and draw different conclusions based on the same set of facts. Therefore, it may be that the only effective rebuttal to expert testimony is contrary testimony by other experts, and to allow a party to call an expert, where he has not properly indicated his intention to do so and makes no claim that the need for or identity of that expert was previously unknown, may work a substantial injustice on the other party.

In this case there was no prior indication by either side that experts would be used. On the record before us we find the trial court was within the permissible scope of its discretion in excluding the expert testimony. Therefore, it is not necessary to reach the question of whether the testimony of the expert would have substituted his judgment for that of the jury.

Affirmed.