**James Odell STRICKLAND,
Plaintiff-Appellee,**

v.

**Pansy P. STRICKLAND,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Western Section.

March 30, 1981.

Permission to Appeal Denied by Supreme
Court June 29, 1981.

Craig J. Donaldson, Memphis, for defendant-appellant; Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, of counsel.

Don A. Southern, Memphis, for plaintiff-appellee; Bruce & Southern, P. C., Memphis, of counsel.

MATHERNE, Judge.

The wife appeals from a judgment of the trial court which awarded the husband a divorce and denied her a divorce, and she also complains of the trial judge's interpretation of Rule 26.02(1), Tennessee Rules of Civil Procedure. The husband brought the original action for divorce alleging, among other grounds, cruel and inhuman treatment on the part of the wife. The wife cross-filed for a divorce based upon the same grounds. The trial court granted the husband a divorce on the ground of cruel and inhuman treatment and dismissed the wife's cross-complaint.

Defendant Pansy Strickland and plaintiff James Strickland were married in November of 1942. They had no children of the marriage, and they separated on March 14, 1978. The parties each owned fifty percent of the stock in Strickland Manufacturing Company, Inc. (company). The trial court made a division of the property owned by the parties, and that portion of the judgment is not challenged on appeal.

Witnesses testified that the Strickland house was disorderly and unclean and contained piles of unwashed clothes and dishes. According to the plaintiff and others, the plaintiff did the cooking or the couple ate sandwiches. Maxine Johnson testified that the defendant told her that she did not understand why the plaintiff put up with her. Plaintiff testified that the defendant would be in her pajamas when he left for work in the morning and still in them when he returned that evening. The defendant denied these claims, and her witnesses testified that the defendant had an average attitude toward household chores and did do some cooking and cleaning.

The plaintiff testified that during the last six or eight months of the marriage the defendant would sleep on the couch and not come to bed at all, despite plaintiff's expressed desire for a normal sexual life. The plaintiff's sister testified that the defendant had told her that while she liked being married, she did not like "the sleeping part of it." Two witnesses testified that the defendant told them she did not love the plaintiff and was only staying with him for

"what she could get." The defendant admitted she slept on the couch, but she explained that her conduct was warranted by a toothache which eventually led to oral surgery and long-standing back problems.

According to the plaintiff, there was no sexual intercourse between the parties after August 1977. Maxine Johnson, employee of defendant, testified that the defendant told her she didn't mind being married, so long as she didn't have to sleep with her husband. The defendant did not deny this, but she indicated "female trouble", and a "back problem" prevented normal relations. The defendant testified that she did make advances toward the plaintiff, but he refused her.

The plaintiff complained that the defendant made trips out of town to visit church acquaintances without his consent and would often stay out late at night. The defendant, who held a ministerial license, would meet and discuss religion with people she would pick up on these trips, including men. According to the defendant, her ministry to people she picked up was carried on during business trips she made for the company.

On many occasions the plaintiff was embarrassed by defendant, who often sent meat back in restaurants to be recooked, and told employees that their upcoming wedding anniversary was going to be the last one, that the plaintiff was doing a poor job and letting the business go down, and that she didn't love the plaintiff and wanted to see him broke. Defendant explained that the incidents in restaurants were handled discreetly and her statements about the business were not intended to embarrass the plaintiff, but only to convey her displeasure in having no control over a company in which she was a 50% owner. Ernest Newburn, the company accountant, admitted that the business had declined about 50%.

The plaintiff complained that in some instances employees disliked the conduct and attitude of the defendant, however he admitted she had acted as a trouble-shooter when trouble arose with employees at the Amory, Mississippi plant, and she, in fact, did straighten out the problem. The defendant also worked in the plant in Memphis, Tennessee, and she helped found the company, working full-time until the last two or three years of the marriage.

The defendant described her husband's attraction to other women and cited one incident in which involvement with an employee of the Amory, Mississippi plant led the woman's husband to threaten to kill the plaintiff. The discovery of a pair of ladies bikini panties and a package and a half of male contraceptives led the defendant to believe her husband was having an affair. In conjunction with the defendant's testimony, photographs were introduced showing the plaintiff with a woman named Martha Burns in Southhaven, Mississippi. The defendant further testified that the plaintiff told her that he visited a woman named Linda Husted in the hospital and offered to set her up in a business. The plaintiff denied sexual involvement with other women, visiting Husted in the hospital and offering to set her up in business, and the presence of male contraceptives and another woman's bikini panties in the house.

■ We can not say that the evidence preponderates against the granting of a divorce to the husband and the dismissal of the wife's suit for divorce. T.C.A. § 27–3–103. The judgment of the trial court in this regard is affirmed.

In considering the second issue on appeal, we note that in the trial court and in this court the parties relied on Rule 26.02, Tennessee Rules of Civil Procedure, as promulgated in 1970. We must first note that the 1970 rules of discovery were revised effective July 1, 1979. The scope of discovery in effect at the time these depositions were taken is governed by the 1979 revised rule 26.02(1) which provides as follows, with bracketed language reflecting the 1970 rule and the italics denoting the 1979 change:

26.02. Scope of Discovery.—Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) IN GENERAL. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any [relevant facts] *discoverable matter.* It is not ground for objection that the [testimony] *information* sought will be inadmissible at the trial if the [testimony] *information* appears reasonably calculated to lead to the discovery of admissible evidence.

We further note that the 1979 revised rule 26.02(1) is the same as federal rule 26(b)(1), effective in 1970.

This issue arises out of the fact that on pretrial discovery deposition the defendant failed to name a detective previously employed by her to investigate the conduct of the plaintiff, as a person "who has information about this divorce suit that is pending." It must be noted that we are dealing with factual witnesses, not expert witnesses.

A problem arises because of the form of some questions posed to the defendant during the discovery. Over several pages of the transcript, the attorney for the plaintiff asked the defendant for the names of witnesses she proposed to produce at the trial. The defendant was evasive, hesitant, and unresponsive. On appeal the defendant argues that the plaintiff was not entitled to an answer to those questions which seek the identity of trial witnesses. We fail to find a reported Tennessee decision on the issue.

█ In courts of federal jurisdiction the majority view appears to be that a party may not be asked on pretrial discovery for the names of trial witnesses. 4 Moore's Federal Practice § 26.57[4], at 26–204 (2d ed. 1980). This view is reasonable because normally the attorney, not the party, decides on the witnesses to be called at trial. Whether or not a particular witness will be called often depends upon the unfolding of

various facts at trial taken in the light of what the witness knows or does not know, and trial tactics will, at times, demand the exclusion of a witness for varied reasons. We, therefore, hold that a party may not be questioned on pretrial discovery deposition for the identity of factual witnesses to be used at the trial.

This is not to say, however, that the word "witness" can not be used in seeking the identity of persons with knowledge of discoverable matter. In *Moore, supra,* it is stated: "(i)t [the similar federal rule] certainly requires disclosure of all *potential* witnesses, for a witness must necessarily be a person 'having knowledge of [some] discoverable matter.'" We do hold, however, that the better form of the question would not use the word "witness," but rather the words "person," "individual," or "people." This identity of the information sought would relate the question directly to the knowledge of the deponent who might not understand the meaning of the word "witness." This form of question would also eliminate some confusion that has arisen as to whether the word "witness" used for this purpose relates only to eye witnesses or to all people who have knowledge of discoverable matter.

█ Eliminating all questions asked the defendant-deponent for the names of witnesses to be used at the trial, we find other questions posed which would have revealed the identity of the detective had they been properly answered. The record reveals several questions to the defendant requesting the names of persons with whom she had talked about testifying in the divorce case. These questions were proper and required a full and complete answer. The defendant was evasive and unresponsive, but, at the urging of her lawyer, did name two or three persons with whom she had talked relative to being a witness. The defendant did not divulge the name of the detective. Also, at a point later on in the discovery deposition, the plaintiff's lawyer asked for the names of witnesses to be used at trial, and the defendant's lawyers objected on the grounds that the question was improper. Thereupon, the following transpired:

**Q.** Other than anyone that you might have previously mentioned, who has information about this divorce suit that is pending?

**A.** There are a number of people that do.

The plaintiff's attorney did not follow up for a more specific answer. The defendant argues that the plaintiff can not now complain because of the failure to follow with questions seeking more specific answers.

A reading of the pretrial discovery deposition clearly places the defendant-deponent in the position of evading practically every question asked pertaining to persons who had knowledge of discoverable matter. It was only at the insistence of her lawyer that any name was given. The issue would be much closer if the defendant at the trial of the lawsuit had not admitted that she intended to frustrate the purpose of discovery. The record reveals that after the defendant had identified certain photographs of the plaintiff and Mrs. Burns, the following transpired during the cross examination of the defendant:

**Q.** Mrs. Strickland, I am constrained to ask you a question. You have a bunch of pictures that you have identified here. Those were taken by a detective that you hired?

**A.** Yes, sir.

**Q.** And he's here today?

**A.** Yes, sir.

**Q.** And when did he take those pictures, to your knowledge?

**A.** They were taken over a several-day period. I don't know just exactly when. I think starting in July. I didn't look at the dates on them.

**Q.** Do you recall my questioning you during the taking of your discovery deposition about what witnesses you knew of that knew anything about the grounds of the divorce that you were relying on? Do you recall my asking you that question?

**A.** You asked me if there was somebody with me at the time that I observed this?

**Q.** No, ma'am. We spent quite a bit of time asking you for the names of any witnesses—not that you necessarily intended to bring in, but all witnesses that knew anything about the fact that you were relying on in connection with your bill for divorce. Do you recall me asking that question?

**A.** I remember you harping at me, yes.

**Q.** Did you ever, at any time, tell me at any time that you had had a detective out there?

**A.** No, sir.

**Q.** Did you ever tell me that you intended to bring a detective in?

**A.** *I didn't intend to tell you that, if I could help you.* (Emphasis added)

**Q.** Thank you for your candor.

We conclude that on pretrial discovery the defendant knowingly, intentionally, and willfully omitted the name of the detective as a person with knowledge of discoverable matter.

The detective was presented by the defendant as a witness at the trial. After reading the discovery deposition, the trial judge ruled that the detective could not testify because the defendant refused to name him on pretrial discovery as a person with knowledge of relevant facts [discoverable matter should have been the test], and that the defendant at trial had admitted that she willfully withheld that information. On appeal the defendant challenges the authority of the trial judge to impose that sanction.

The general scheme of rule 37 is that, ordinarily, sanctions can be applied only for a failure to comply with an order of the court. "When the discovery procedure is initially set in motion by the parties themselves without court order, the party seeking discovery must first obtain an order under rule 37(a) requiring the recalcitrant party or witness to make the discovery sought; it is only a violation of this order that is punishable under rule 37(b). The only exceptions to this scheme are rule 37(d), which permits an immediate sanction against as party for a complete failure to

respond' to a notice of deposition, interrogatories or a request for inspection, and rule 37(c), which authorizes imposition of expenses for an unjustified failure to admit under rule 36." 8 Wright and Miller, Federal Practice and Procedure: Civil § 2282 (1970); 4 A Moore's Federal Practice § 37.-02[2], at 37–33 (2nd ed. 1980).

However, in the situation now being considered where a party knowingly and deliberately refused to reveal the name of a person who had knowledge of discoverable matter and then presented that person as a witness at the trial, neither Tennessee nor federal rule 37 provide any sanction whatsoever.

What recourse then is available where Tennessee rule 26.02(1) has been violated as herein noted? To ask the question is to suggest the answer—the only source of corrective action lies within the inherent power of the trial judge. Rule 26.02(1) is designed for the discovery of facts which will enable litigants to prepare for trial free from the element of surprise, which, prior to the adoption of the rules, frequently led to a result based more upon the legal maneuvering of counsel than upon the merits of the case. *Gebhard v. Niedzwiecki* (1963) 265 Minn. 471, 122 N.W.2d 110. When the rules do not provide a sanction for those violations which defeat the purpose of rule 26.02(1), it is mandatory that the trial judge have the authority to take such action as necessary to achieve that purpose.

■ The trial court must have wide discretion in these matters. *Gormley v. Vartian* (R.I.1979) 403 A.2d 256; *Dempski v. Dempski* (1963) 27 Ill.2d 69, 187 N.E.2d 734; *Halverson v. Campbell Soup Company* (7th Cir. 1967) 374 F.2d 810; *Mengel Properties v. City of Louisville* (Ky.1965) 400 S.W.2d 690; 8 Wright and Miller, Federal Practice and Procedure: Civil § 2050 (1970), and the cases therein cited. The fact that the court can impose the sanction of not permitting the unnamed witness to testify, does not mean that it must do so. Generally, where a party has not given the name of a person with knowledge of discoverable matter, the court should consider the explanation given

for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance. In the light of these considerations the court may permit the witness to testify, or it may exclude the testimony, or it may grant a continuance so that the other side may take the deposition of the witness or otherwise prepare to meet the testimony. See: 8 Wright and Miller, Federal Practice and Procedure, *supra*; 23 Am.Jur.2d *Depositions and Discovery* § 265 (1965).

■ Where, as here, the party willfully, knowingly, and intentionally withheld the name of a person with knowledge of discoverable matter, the imposition of the sanction of not permitting that person to testify is strongly suggested. See: *Gebhard v. Niedzwiecki, supra.* We also note that in this instance the testimony of the detective whose name the defendant refused to reveal was not of crucial importance because the photographs which he had taken had been introduced in evidence by the defendant. No one was prejudiced by his testimony not being admitted because a considerable portion of the results of his investigation was before the court in the form of the photographs. Therefore, we hold that the trial judge did not abuse his discretion by refusing to let the unnamed detective testify at the trial.

■ The defendant argues that because certain photographs taken by the detective were introduced into evidence the testimony of the detective is rendered admissible despite the violation by the defendant of rule 26.02(1). We disagree with this argument. The photographs were identified by the defendant as depicting the plaintiff and Mrs. Burns entering and leaving an apartment together. Under the circumstances the photographs were properly admitted even though they were taken by the detective. Compare: *Great Atlantic Tea Company v. Lyle* (1961) 49 Tenn.App. 78, 351 S.W.2d 391. The admission of this evidence has no bearing whatever upon the right of the defendant to put into evidence the testimony of the detective after she violated

rule 26.02(1) as herein related. The pictures could have been taken by anyone; the testimony of the detective could only be given by the detective, and the knowledge he possessed was effectively denied the plaintiff by the defendant's violation of rule 26.02(1). The trial judge is affirmed in his holding that the testimony of the detective is inadmissible.

The defendant relies strongly on the case of *Reed v. Allen* (Tenn.App.1974) 522 S.W.2d 339, wherein it was held that the trial judge did not err in permitting a witness to testify whose identity was not made known by the party in answer to such request by discovery deposition. The *Reed* case is the only published Tennessee opinion we have found dealing with this problem. The holdings in *Reed* have received considerable attention and comment. See: 43 Tenn.Law Review 124 (1975).

In *Reed* the alleged discovery deposition was not made a part of the record before the appellate court. The court found, however, that on cross examination the defendant testified that:

(a) He had given a discovery deposition.

(b) At the time of the deposition, defendant knew that Mr. Gibbs, who was not present at the collision, had information which he was called upon to relate at the trial.

(c) On discovery defendant was asked "some questions" about "who you were going to use, or anticipated using as witnesses."

(d) On discovery, defendant said nothing about anticipating using any witnesses except the occupants of his vehicle. As we interpret *Reed*, the decisive holding was as follows:

In the present case, the failure to place in evidence the entire deposition, or all of the pertinent parts thereof, the reasonable possibility of misunderstanding as to the meaning of questions asked, and the particular nature of the testimony admitted, all militate against the exclusion of evidence as a sanction for erroneous answer to discovery interrogation. That is to say, even if this Court were disposed to reverse a trial court for the admission of testimony of an undisclosed witness, this would not be a suitable case for such a ruling.

We agree with that holding of the *Reed* court as being in conformity with the authorities herein cited. All other holdings in *Reed* appear to this court as surplusage. The discussion of there being no sanctions available under rule 37 was not necessary because the court held that rule 26.02 [now 26.02(1)] had not been violated. The discussion of whether the word "witness" pertains solely to "eye witness" points up the problem of using that word in the discovery interrogation, but that facet of the matter was properly considered by that portion of the opinion above quoted and approved. Therefore, we conclude that the *Reed* case is not authority for the insistence that the detective in the present case should have been allowed to testify.

The judgment of the trial court is affirmed. The cost in this court is adjudged against the defendant-appellant for which execution may issue, if necessary.

NEARN, J., and RILEY, Special Judge, concur.