Ronald E. and Emma DANIELSON,
husband and wife, Appellants,

Robert Voges as Trustee for the Heirs
and Next of Kin of Sandra J. Voges,
deceased, Appellant,

Ray Willard, as Trustee for the Next of
Kin of Maxine Willard,
decedent, Appellant,

Gary M. Ottum, Appellant,

v.

Donald HANFORD, Special Administra-
tor for the Estate of Debra Ann
Hanford, Respondent.

No. C7–83–1385.

Court of Appeals of Minnesota.

June 19, 1984.

 

Donald Chance Mark, Jr., Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Danielson.

Edward J. Hance, Edward J. Hance Law Firm, Minneapolis, for Voges.

Richard G. Hunegs, Peter S. Riley, DeParcq, Perl, Hunegs, Rudquist & Koenig, P.A., Minneapolis, for Willard.

Curtis D. Smith, Wiese & Cox, Ltd., Minneapolis, for Ottum.

David D. Alsop, Gislason, Dosland, Hunter & Malecki, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and LANSING and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Plaintiffs brought wrongful death and personal injury actions against the estate of Debra Hanford, alleging that her negligent driving caused a head-on collision. Plaintiffs' actions were consolidated for trial on the issue of liability alone, and a jury found that Hanford had not been driving at the time of the accident. Judgment was entered in favor of Hanford's estate, and plaintiffs' motions for judgment notwithstanding the verdict or for a new trial were denied. Plaintiffs appeal, alleging errors of law occurring at trial. We affirm.

## FACTS

These actions arose out of a two-car, head-on collision, which occurred on August 17, 1980. Ray Willard was driving one vehicle with Maxine Willard, Ronald Danielson, and Emma Danielson riding as passengers. The other vehicle—a Camaro—was occupied by Duane Voges, Sandra Voges, Debra Hanford and Gary Ottum. Gary Ottum was the only occupant of the Camaro who survived the accident.

Following the accident numerous lawsuits were commenced for personal injury and wrongful death. Because it was uncertain whether Duane Voges or Debra

Hanford had been driving the Camaro at the time of the accident, this trial was commenced to determine who was the driver of the Camaro.

Prior to trial the court ruled that neither experts nor lay persons would be allowed to render any opinion concerning who had been driving the vehicle. The court reasoned that the severity of the accident and the almost total destruction of the Camaro left no basis for any person to render a meaningful or helpful opinion concerning the driver of the vehicle. The court concluded, in accordance with Rule 701 and Rule 702, Minn.R.Evid., that any opinion on this issue would be prejudicial and would not assist the jury's understanding of the evidence.

Therefore, the parties agreed that a portion of the investigating trooper's accident report would not be allowed into evidence. That report contained a statement by Gary Ottum that he was "95 percent sure" *Debra Hanford* had been driving the Camaro, with a notation by the trooper immediately following which indicated in parentheses: "Positions of the victims trapped in the vehicle showed *Duane Voges* as the driver." (Emphasis supplied.)

During the course of the trial, however, counsel for appellant Willard began to cross-examine the trooper as follows:

Q. Did you record anything in your notes or in your official report that would indicate that you disbelieved or doubted what Mr. Ottum told you? Did you write anything critical of what he said to you?

A. I guess I did, in my official report.

Q. I want you to tell me, looking at the official report, if you said anything that Mr. Ottum—recorded anything that Mr. Ottum said to you was incorrect or not the truth specific reference to Mr. Ottum?

A. In reference to Mr. Ottum's statements to me, I did in parenthesis put my observation, which was contrary to what Mr. Ottum had told me in a portion of his statement. I put in parenthesis—

Q. Listen to me one more second, Officer. Did you write anything in that statement, did you write anything or make any notation or did you tell anyone else in your department or your supervisor that Mr. Ottum told you something that was not the truth, and I am talking about specific reference to Mr. Ottum, not your own surmise?

A. I believe I am referring to Mr. Ottum when I am in the portion where I am conversing with Mr. Ottum—excuse me—and logging his statements, I did write something that was contrary to a portion of what Ottum said.

\* \* \* \* \* \*

Following this questioning and outside the hearing of the jury, counsel for respondent Debra Hanford requested that the court allow redirect examination of the trooper to indicate what he had noted in his report, since counsel for appellant Willard had allegedly "opened the door" to this evidence. Counsel for appellant Willard objected, asserting that his questioning had been designed simply to demonstrate that Gary Ottum had appeared credible to the trooper, whereas the notation by the trooper consisted of the trooper's opinion on who had been driving the Camaro. Counsel for all other appellants joined in the objection.

After considering the arguments by counsel, the court concluded that the door was opened for receipt of the trooper's accident report notation, although the purpose of admission would be limited by an appropriate instruction. The court allowed the trooper to testify concerning his notation in the accident report. In its final instructions the trial court cautioned:

You also heard testimony from [the trooper] by way of his reading from his report that he had indicated in the report that the position of the bodies indicated to him Duane Voges was the driver. This statement of [the trooper] does not go to the ultimate issue of who was driving the car, but is only to show that

[the trooper] did in fact question the accuracy of Gary Ottum's statement that he was 95 percent sure Debra Hanford was driving the car.

The jury returned a verdict determining that Duane Voges had been the driver of the Camaro. Appellants Willard, Ottum, Voges and Danielsons moved for a judgment notwithstanding the verdict or a new trial. This appeal is from the trial court's denial of those motions.

## ISSUES

1. Did the trial court erroneously apply the doctrine of curative admissibility to allow evidence of the trooper's notation?

2. Should a new trial have been granted to appellants Ottum, Danielsons, and Voges because questioning by counsel for appellant Willard constituted prejudicial error?

3. Did the trial court erroneously exclude rebuttal opinion testimony on the issue of the driver's identity?

4. Did the trial court erroneously exclude a photograph which had not been disclosed at the pre-trial conference?

## ANALYSIS

### I.

*The trial court properly applied the doctrine of curative admissibility in this instance.*

■ The appellants claim that the trial court erred by allowing the trooper's notation concerning the positions of the bodies to be offered into evidence, since that notation constituted an opinion by the trooper which had been previously disallowed by the court. The appellants argue that counsel for appellant Willard was only questioning the trooper about Gary Ottum's credibility, and not about the trooper's personal opinions concerning who had been driving the Camaro.

The respondent replies that the questioning by counsel for appellant Willard created the inference that the trooper believed Gary Ottum; thus, the door was opened to rebuttal testimony consisting of the trooper's notation to the contrary. The respondent argues that the doctrine of curative admissibility was properly applied by the court in this instance to allow the introduction of the trooper's notations.

The doctrine of curative admissibility, expressed in *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377, 386 (Minn.1977), "allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has 'opened the door' by introducing similarly inadmissible evidence on the same point." *Busch* explains:

In order to be entitled as a matter of right to present rebutting evidence on an evidentiary fact: (a) the original evidence must be inadmissible and prejudicial, (b) the rebuttal evidence must be similarly inadmissible, and (c) the rebuttal evidence must be limited to the same evidentiary fact as the original inadmissible evidence.

*Id.*, 262 N.W.2d at 387. (Footnote omitted.)

When the above doctrine is applied to the contested portion of the cross-examination in this instance it is apparent that the trooper's original replies to appellant Willard's questions were not prejudicial to respondent Hanford—rather, the trooper's replies to the questions consistently indicated that he did not agree with Gary Ottum's statement that respondent Hanford had been driving the Camaro. Although the actual replies by the trooper were not prejudicial, however, appellant Willard's questions to the trooper themselves created an inadmissible and prejudicial impression that the trooper did not disbelieve Gary Ottum. The Minnesota Supreme Court has not addressed the question whether inquiry alone may trigger the doctrine of curative admissibility, but Professor McCormick has stated:

[I]f the incompetent evidence, *or even the inquiry eliciting it,* is so prejudice-arousing that an objection or motion to strike can not have erased the harm, then it seems that the adversary should be entitled to answer it as of right.

McCormick, *Handbook of the Law of Evidence*, § 57 (2d ed., 1972). (Footnote omitted; emphasis supplied.) In this instance the prejudice by appellant Willard's questions could not have been eliminated by a motion to strike; thus, the doctrine of curative admissibility was properly applied in this instance, and the trooper's responses concerning the accident report were properly admitted.

## II.

*A new trial was properly denied appellants Ottum, Danielsons and Voges, since the questioning by counsel for appellant Willard did not constitute prejudicial error.*

The appellants claim that the questioning by counsel for appellant Willard constituted an irregularity in the trial proceedings which deprived them of a fair trial. *See* Rule 59.01(1), Minn.R.Civ.P.

In view of the determination that evidence of the trooper's notation was properly admitted, any conclusion that the appellants were deprived of a fair trial must rest upon a decision that the limiting instruction of the court was not sufficient to avoid prejudice to the appellants.

After considering appellants' motions for judgment notwithstanding the verdict or a new trial, the court determined that its limiting instruction was sufficient to avoid any potential prejudice to appellants. This determination by the trial court was an exercise of its sound discretion should not be reversed, absent abuse. *Cambern v. Sioux Tools, Inc.,* 323 N.W.2d 795 (Minn. 1982).

We find that the trial court's determination was reasonable. We especially note that there is ample evidence in the transcript in addition to the trooper's notation which would support a jury determination that Duane Voges was driving the Camaro. Three members of the fire department testified that when they arrived at the Camaro a male was seated on the driver's side and a female was lying across his lap with her legs shoved down on the passenger side. A driver of a vehicle which the Camaro passed shortly before the accident testified that the driver of the Camaro had short hair and looked like a man. Appellant Emma Danielson testified at trial that the person in the passenger seat appeared to have long hair. Thus, even if the limiting instruction had been ineffective, the trial court could have properly determined that the trooper's notation was merely cumulative and not prejudicial. An error asserted must be prejudicial or a new trial is properly denied. *Meagher v. Kavli,* 256 Minn. 54, 97 N.W.2d 370 (1959). Finally, the trial court noted that the issues were identical for all appellants, that they cooperated with each other during settlement negotiations and throughout the trial, and must be bound by the questions and answers solicited by any one of their group.

## III.

*The trial court properly excluded rebuttal opinion testimony on the issue of the driver's identity.*

Once the notation of the trooper concerning the driver of the Camaro was introduced, the appellants argue they should have been allowed to offer rebuttal opinion testimony. Specifically, the appellants claim they should have been allowed to introduce evidence that the trooper demanded blood samples from the bodies of both Debra Hanford and Duane Voges, indicating that the trooper did not actually know who had been driving the Camaro. In addition, the appellants claim they were erroneously denied the opportunity to present testimony by a medical doctor concerning the location of bruises on Debra Hanford and Duane Voges, and the doctor's opinion concerning where Hanford and Voges had been seated when they received those bruises. The appellants offer two reasons why this evidence should have been allowed: (a) the doctrine of curative admissibility, and (b) independent admissibility of the evidence.

(a) *Doctrine of curative admissibility.* As indicated above, the doctrine of

curative admissibility requires that the original evidence be inadmissible and prejudicial. *Busch v. Busch Construction, Inc.,* 262 N.W.2d 377 (Minn.1977). Since the trooper's testimony concerning his notation has been determined admissible, the doctrine is not applicable here to allow rebuttal opinion testimony.

■ (b) *Independent admissibility of the evidence.* Since the original evidence concerning Trooper Garvey's notation was admissible, it was within the trial court's discretion to determine whether rebuttal opinion testimony should be allowed. *Busch v. Busch Construction, Inc.,* 262 N.W.2d at 387; *Thurman v. Pepsi-Cola Bottling Co.,* 289 N.W.2d 141, 145 (Minn. 1980). The trial court clearly indicated to the parties prior to trial that expert opinion testimony would be prejudicial and would not assist the jury. This decision is justified by the almost total destruction of the vehicle. The allowance of testimony concerning the trooper's notation with an appropriate limiting instruction does not alter the conclusion that any additional opinion testimony would still be prejudicial and of little assistance to the jury. It is therefore our determination that the trial court's decision to disallow this evidence, and its reaffirmance of that decision upon the motion for a new trial, did not constitute an abuse of discretion. *See Renne v. Gustafson,* 292 Minn. 218, 194 N.W.2d 267 (1972).

## IV.

*The trial court properly excluded a photograph which had not been disclosed at the pre-trial conference.*

■ During the course of the trial, counsel for appellant Willard learned that two photographs had been taken shortly after the accident. One of those photographs showed Duane Voges' shoe pinned between the front passenger seat and the center console of the Camaro. Because the pre-trial order had required that all exhibits be exchanged prior to trial, the court refused to admit the photographs.

Rule 16, Minn.R.Civ.P. provides that a pre-trial order "when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." In *Cook Seed Company v. Welker,* 288 Minn. 412, 414, 181 N.W.2d 870, 872 (1970) where the trial court admitted certain documents which had not been listed in the pre-trial order, the Minnesota Supreme Court, citing several federal authorities, held:

These authorities all recognize that, since the pretrial conference is held shortly before trial and at a time when each side should usually know what it intends to prove, courts are less liberal in amending orders and extending the latitude of evidence. Trial courts, in their discretion, may modify a pretrial conference order since the rule itself provides that such modification may be made to "prevent manifest injustice," and since the vindication of procedural law should yield to the obligation of the court to see that justice is done. Even though a pretrial order may have been entered, the trial court remains free to alter, modify, or even reverse, such order in the interests of justice.

The "interests of justice" are best determined by the trial court in the exercise of its discretion:

Trial courts must have discretion to determine the sanction appropriate to a violation of the discovery rules, for they are in the best position to assess the degree of prejudice that will arise from the violation and the efficacy of the remedies available that may prevent prejudice from resulting.

*Cornfeldt v. Tongen,* 262 N.W.2d 684, 697 (Minn.1977). A trial court's decision to exclude evidence which has not been disclosed prior to trial should be reversed only if that decision constitutes an abuse of discretion. *Freeburg v. Lillydale Grand Central Corp.,* 284 Minn. 388, 170 N.W.2d 330 (1969), *citing Gebhard v. Niedzwiecki,* 265 Minn. 471, 122 N.W.2d 110 (1963).

■ We cannot say that the trial court's decision to disallow the photograph consti-

**764**

tuted an abuse of discretion, especially since the court did allow the witness who took the photograph to testify about what he saw when he took the photograph. Of particular note also is the fact that the court excluded another previously undisclosed photograph which the respondents sought to introduce at trial. The court's decision to disallow the photographs was not arbitrary or unfair, but was made in the interests of procedural regularity and was applied equally to both parties.

### DECISION

The trial court's rulings upon the various evidentiary issues raised at trial were correct, and the court therefore properly denied appellants' post-trial motions contesting the propriety of those rulings.

Affirmed.