DWIGHT G. CRUNK, Plaintiff-in-Error, v. JAMES G. GROOMS, Defendant-in-Error.

DWIGHT G. CRUNK, a minor b/n/f and father, W. G. Crunk, Plaintiff-in-error, v. J. B. PEYTON and Brum Frank Peyton, Defendants-in-Error.

W. G. CRUNK, Plaintiff-in-Error, v. J. B. PEYTON and Brum Frank Peyton, Defendants-in-Error.

DWIGHT G. CRUNK, Plaintiff-in-Error, v. J. B. PEYTON, Defendant-in-Error. —450 S.W.2d 15.

Middle Section.  August 1, 1969

Certiorari Denied by Supreme Court January 19, 1970.

612

Gracey, Buck, Maddin & Cowan, Nashville, for plaintiffs in error.

Taylor & Schlater, Geo. P. Linebaugh, Jr., and C. Edward Coomer, Nashville, for defendants in error.

## THE CASE

SHRIVER, J. These cases were filed to recover damages growing out of a three-car collision that occurred in Davidson County, Tennessee. They came on for trial before the Honorable Roy A. Miles, Judge, and a jury on September 30, 1968 in the First Circuit Court of Davidson County and, after four days of trial, the Jury returned verdicts as follows:

In the action of James G. Grooms vs. Dwight G. Crunk and Brum Frank Peyton, the verdict was in favor of the plaintiff Grooms against the defendant Dwight G. Crunk in the amount of $3,000.00 compensatory damages.

In the actions of Dwight G. Crunk, b/n/f, etc. and William G. Crunk vs. J. B. Peyton and Brum Frank Peyton, the verdict was in favor of the defendants Peyton.

In the action of J. B. Peyton vs. Dwight G. Crunk, the verdict was in favor of plaintiff in the amount of $600.00.

Judgments were entered on the verdicts and after motions for new trials were overruled the causes were appealed in error to this Court and assignments filed.

## THE FACTS

The record herein discloses the following pertinent facts:

(1) The three-car accident which gave rise to these cases occurred on July 30, 1966 at approximately 8:00

P.M. at the intersection of Harding Place and Danby Drive in Nashville. Harding Place which runs generally East and West is a four-lane highway 52 feet wide including a painted median strip 4 feet wide, while Danby Drive which runs generally North and South is a two-lane street that intersects Harding Place at right angles.

(2) At the time of the accident there were stop signs on Danby Drive for traffic moving from that street into Harding Place.

Brum Frank Peyton in an automobile belonging to his father, J. B. Peyton, was driving in a southerly direction on Danby Drive when he came to the intersection of Harding Place where he stopped, intending to cross the westbound lanes of Harding Place and turn left into the eastbound lanes of that street. He stated that when he stopped at Harding Place he could see the headlights of another car coming over the hill and that it was at such distance that he thought he had plenty of time to cross the intersection in safety. He stated that the top of the hill was about 1,000 feet to his left and that one could actually see about 600 feet in that direction. However, he stated further that when he saw the headlights of the car that struck him it was about 1,000 feet away. He pulled out into the intersection and was struck by the Crunk automobile at or near the center of Harding Place, there being some evidence to the effect that the collision occurred on the inside lane for Eastbound traffic. The officer who went to the scene of the accident testified that all the debris was in the southern half of the intersection and there were no skid marks behind the Crunk car.

(3) The second collision occurred when the Crunk automobile, after first colliding with the Peyton automo-

bile, proceeded to its left at an angle across Harding Place and into the path of the Grooms automobile which was proceeding Eastwardly on Harding Place, this being very nearly a head-on collision. The speed limit at this point was 40 miles an hour and Grooms stated to Officer Bryant that he didn't know how fast he was traveling at the time but didn't think he was going in excess of 50 miles an hour. Skid marks from his vehicle were about 63 feet long.

(4) Dwight G. Crunk, a young man 20 years of age, had previously left an apartment house approximately 1,900 feet from Danby Drive in a hurried manner and, according to Officer Merlin, who testified about it, his car was expelling gravel against the patrol car some 15 or 20 feet away, and he accelerated all the way to the top of the rise as he proceeded in a westerly direction and until he got out of sight of the officer in the patrol car. Officer Merlin followed Crunk and, coming over the rise, discovered the collision that had just occurred.

(5) The Grooms automobile sustained damages of $2,210.00. The Crunk automobile was a total loss, and the Peyton car sustained damages of $600.00.

## ASSIGNMENTS OF ERROR

There are three assignments which may be summarized as follows:

(1) The court erred in admitting questions and answers over the objection of plaintiffs-in-error as to two prior speeding violations of Dwight G. Crunk;

(2) The court erred in allowing the testimony of the witness Stewart and in refusing to instruct the jury to disregard such testimony after it was given, said testi-

▬▬▬▬▬▬▬▬▬▬▬

mony being incompetent because the witness was unable to identify the driver or the automobile which he said was going 70 miles an hour and which plaintiff sought to show was the automobile of plaintiff-in-error Crunk.

(3) The verdict is against the weight of the evidence.

In support of the first assignment it is insisted by counsel for plaintiff-in-error, Crunk, that, over vigorous objection, he was allowed to be asked repeated questions concerning prior traffic violations and, in support of their argument, they cite the cases of Mitchell v. Farr, 32 Tenn.App. 200, 222 S.W.2d 218 and Davis v. Wicker, 206 Tenn. 403, 333 S.W.2d 921.

On July 30, 1967, the discovery deposition of Dwight G. Crunk was taken and in said deposition, without objection, he was asked if he had ever been given any tickets for moving violations, to which he answered that he was given a citation for driving a motorcycle without mufflers and that that was the only citation he remembered having gotten.

At the trial, in the absence of the jury, he was questioned about prior violations and his testimony revealed the following:

| "Date | Violation | Testimony |
|-------|-----------|-----------|
| 10/11/64 | Drag racing | Yes |
| 12/9/64 | Speeding and running red light (2 citations) | Don't recall the exact date |
| 12/26/65 | Speeding and following too closely | Yes |
| 9/22/65 | Speeding | Yes |

| | | | |
|---|---|---|---|
| (Prior to Accident) | 12/1/65 | Running red light | Don't deny the charge |
| | 2/17/66 | Improper lighting | Yes |
| | 5/21/66 | Automobile Accident | Yes |
| | 6/22/66 | Two separate offenses of speeding | Yes |
| * | 7/30/66 | Accident involved in this case | Yes |
| (Subsequent to Accident) | 2/1/67 | Stop sign | Yes |
| | 2/6/67 | Malicious stabbing | Not convicted |
| | 9/28/67 | Automobile Accident | Yes |
| | 3/3/68 | Automobile Accident | Don't recall |
| | 7/28/66 | Accident | Yes |
| | 10/21/68 | Speeding | Yes |
| | 10/26/68 | Speeding | Yes |
| | 12/8/68 | Speeding | Plead Guilty'' |

In view of this record and the testimony given in his discovery deposition, counsel for the Peytons insisted that questions relative to his prior violations were admissible on the question of credibility. However, the Court refused to admit the evidence for that purpose but did allow the witness to question him to some extent for the purpose of showing "habit" and so instructed the jury.

The result of this was that counsel for Peytons asked the defendant in the presence of the jury only about the two most recent prior speeding violations, both of which occurred on July 22, 1967, just five weeks prior to the accident in the case at bar, and did not further pursue this line of questioning.

Since this raises the most serious question presented for determination on this appeal, let's examine the record to see precisely what the record reveals concerning same.

The first assignment of error is as follows:

"1. The Trial Court erred in overruling the first ground of the motion of Plaintiffs-in-Error for a new trial, which was: 'The Court erred in admitting the question and answer over objection as to two prior speeding violations of Dwight G. Crunk, those questions not being material in this cause, and the only possible effect of those questions and answers being prejudice of the cause of the parties Dwight G, Crunk and William G. Crunk.' T.R. 28."

In support of this assignment, defendant presents two propositions of law, viz:

"In a case involving damages arising out of a collision between automobiles, a question on cross-examination of one of the drivers as to whether or not that driver has had previous violations is improper as not being material to the issues on trial."

Mitchell v. Farr, 32 Tenn.App. 200, 222 S.W.2d 218 (1949).

Davis v. Wicker, 206 Tenn. 403, 333 S.W.2d 921 (1960).

"On cross-examination, if specific acts are to be inquired about, which are not relevant to the issues, for the purpose of affecting credibility, they must be of such a nature as to tend to have that effect. Acts tending to have that effect include convictions of offen-

ses involving moral turpitude, but do not include indictments for offenses involving moral turpitude."

Davis v. Wicker, 206 Tenn. 403, 333 S.W.2d 921 (1960).

The specific question and answer referred to in the assignment of error appears in the following excerpt from the Bill of Exceptions:

"MR. SCHLATER: Your Honor please, I believe I got a no answer to my question about speeding violations and I am going to ask him specifically about some of them.

THE COURT: You asked him if he had appeared in the Juvenile Court and was objected to and sustained.

MR. SCHLATER: Well, all right. I'll rephrase that. Did you violate the speed laws on June 22, 1966 on two different occasions?

MR. MILLER: Objection for, among other reasons, this calls for a conclusion on the part of the witness. There is no testimony he is a law enforcement officer.

MR. SCHLATER: I don't know anybody better qualified.

THE COURT: Objection overruled.

MR. MILLER: Note our exception.

A. Would you repeat the question?

Q. I said were you—did you violate the speeding laws on June 22, 1966 on two separate incidents?

MR. MILLER: Objection.

Q. Don't look at your lawyer.

A. Yes, sir.

THE COURT: Yes, sir?

MR. MILLER: He can look at his lawyer if he wants to.

MR. SCHLATER: He said yes, he did.

MR. MILLER: Note our exception to the ruling.

Q. When are the other times, Mr. Dwight Crunk?

MR. MILLER: Objection.

THE COURT: Objection overruled.

MR. MILLER: Note our exception.

A. I don't recall offhand. You have the record. I don't recall.

Q. You have just forgotten abqut those?

MR. MILLER: Objection.

■■ No ground for objection was stated except that the question called for a conclusion on the part of the defendant-witness. This was not a valid ground of objection. Witnesses, more especially parties, are subject to cross-examination under much less restriction than is imposed on direct examination. An especially wide latitude is to be allowed in cross-examination of a party who offers himself as a witness. Wagner v. Nivin, 46 Tenn.App. 581, 332 S.W.2d 511 (1959) and authorities cited therein.

■ As a general rule, one does not have to be an expert to estimate the speed of a vehicle in ordinary use,

32 C.J.S. Evidence sec. 546, p. 237. If a party is incompetent to conclude on the witness stand whether he was violating the speed law, he would perforce be incompetent to operate a motor vehicle.

The ground of objection stated to the trial court has actually been abandoned in this Court, and a new ground has been adopted and stated in the assignment of error, supra.

In Jack M. Bass & Co. v. Parker, 208 Tenn. 38, 343 S.W.2d 879 (1960) the Tennessee Supreme Court overruled an assignment of error based upon admission of evidence and said:

"[6] It is axiomatic that objections to evidence must be specific and state the ground of claimed inadmissibility. Caruthers' History of a Lawsuit, 7th Ed., Sec. 337, p. 374.

"We have carefully read and re-read the objections made and the grounds of the motion to strike from the record the above evidence and we do not find that either of the above grounds was specified. * * *"

"Such being the state of the record, we cannot consider these grounds of objection to this evidence. The assignment must be overruled." 208 Tenn. pp. 48, 49, 343 S.W.2d p. 884.

In the case of Thomas v. Harper, 53 Tenn.App. 549, 385 S.W.2d 130 (1964) this Court held that on appeal, the objecting party is limited to the ground or grounds of objection stated to the trial court.

■ The above quoted portion of the bill of exceptions contains no record of any statement to the trial court

at the time of objection which would support the ground cited in the first assignment of error.

At other points during the trial of this case objections and arguments were presented in regard to kindred matters, however, a careful perusal of the entire record fails to disclose that the right to urge this ground on appeal was preserved at any other state of the trial.

The argument of defendant quotes the instruction given by the Trial Judge to the jury in regard to the consideration to be given to the question and answer objected to, but no assignment of error is made in this Court as to said instruction.

For the reasons stated, the complaint presented by the first assignment of error was not properly perfected and preserved for consideration in this Court, hence the first assignment is respectfully overruled.

The second assignment complains of the admission of the testimony of Charles Stewart, a wrecker driver who testified that, as he drove Eastward on Harding Place about the time of the accident in question, having just passed the intersection of Danby, he saw a car approaching him, going in a westerly direction at what he estimated to be about 70 miles an hour. He testified that this car was followed by a police car going in the same direction. After he saw this car apparently being pursued by a police car, he immediately turned around in his wrecker and went back to Danby Drive and Harding Place where the accident had occurred since he passed there a few moments earlier. He further testified that the speeding car and the police car in pursuit thereof were the only two cars that passed him from the time he had passed the intersection of Danby Drive and Harding

Place until he turned around and went back to the scene of the accident.

The fact that he could not state what was the make or color of the car he saw speeding by did not render his testimony inadmissible, it only went to the question of its weight.

We therefore overrule the second assignment of error.

■ The third assignment, which complains that the weight of the evidence is against the verdict, is not available to plaintiffs-in-error on appeal from a jury verdict as we have held in many cases.

It results that the assignments of error are all overruled and the judgment of the Trial Court is affirmed.

Puryear and Todd, JJ., concur.