IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 15, 2008

## STATE OF TENNESSEE v. STACEY WAYNE CREEKMORE

**Direct Appeal from the Circuit Court for Blount County**
**No. C-16650     Michael H. Meares, Judge**

---

**No. E2008-00012-CCA-R3-CD - Filed August 19, 2009**

---

The defendant, Stacey Wayne Creekmore, presents for review a certified question of law following his guilty plea to driving under the influence (DUI), second offense, a Class A misdemeanor. *See* Tenn. R. Crim. P. 37(b)(2)(I). As a condition of his guilty plea, the defendant explicitly reserved a certified question of law challenging the denial of his motion to suppress evidence obtained pursuant to a warrantless stop. The defendant argues that the officer lacked reasonable suspicion, as required under both the United States and Tennessee Constitutions, to conduct an investigatory stop of his vehicle. Following review of the record, we find no error in the denial of the motion and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Joe Costner, Maryville, Tennessee, for the appellant, Stacey Wayne Creekmore.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Michael L. Flynn, District Attorney General; and Andrew Watts, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Following a traffic stop, the defendant was arrested for DUI. He was subsequently indicted by a Blount County grand jury for second offense DUI, speeding, and violation of the implied consent law. The defendant filed a motion to suppress, which the trial court denied, finding that under the totality of the circumstances, the officer had reasonable suspicion to stop the defendant's vehicle. Following the denial of his motion to suppress, the defendant pled guilty to DUI, second offense, and was sentenced to a term of eleven months and twenty-nine days, all suspended but for forty-five days. However, as part of the guilty plea, the defendant reserved a certified question of

law challenging the stop of his vehicle, which is now pending before this court following his timely filed notice of appeal.

At the motion to suppress hearing, both Deputy Emily Lawson of the Blount County Sheriff's Department and the defendant testified. Deputy Lawson testified that, during the early morning hours of May 29, 2006, she was on routine patrol on Alcoa Highway and, as she approached from the rear, she observed the defendant driving a light green pickup truck traveling in the right-hand lane of the divided highway. Deputy Lawson stated that she saw the defendant "cross the fog line," which caught her attention. She continued to follow the defendant, matching his speed and traveling approximately two and a half to three car lengths behind him and further observed that he was weaving within his lane of traffic. According to Deputy Lawson, the defendant "would touch or cross the dividing line, the center line, come back over and touch across the fog line." Deputy Lawson continued to follow the defendant for approximately three miles. During that period, she noted that there were periods when he would come across the lane and touch or cross the center line and times when he straightened up and maintained a "straight vector." She further stated that after traveling in the straight vector for approximately half a mile, the defendant again began to weave and would "cross or touch one line, cross or touch the other line." Deputy Lawson stated that she saw the defendant cross or touch either one line or the other approximately seven times.

Deputy Lawson testified that during the period in which she was following the defendant, the speed at which he was traveling fluctuated between forty-five miles per hour and fifty-nine miles per hour. According to Deputy Lawson, the speed limit in that area is fifty miles per hour, and she stated that forty-five miles per hour was a "significantly slow" speed to be traveling on the four-lane roadway. The defendant would slow to forty-five miles per hour and maintain that speed for several seconds before speeding up. Deputy Lawson, whose car was not equipped with radar, used the technique of "pacing" to determine these speeds by matching her speed to the defendants. At one point, just prior to her stop of the defendant, Deputy Lawson believed that the defendant might be attempting to run from her as he accelerated more rapidly than he had previously. She specifically stated, however, that her "final reason" for stopping the defendant was because he "crossed the center line significantly." She also specifically stated that she did not stop the defendant for speeding, despite the fact that she was aware that he had, in fact, exceeded the posted speed limit. She testified that her main reason for stopping the vehicle was "[s]uspicion of DUI." However, she also indicated that the fluctuating speeds at which the defendant was traveling were part of her basis for the stop.

Deputy Lawson testified that traveling five miles per hour below the speed limit, based upon her training, was a reason to suspect that the driver might be impaired. However, she acknowledged on cross-examination that the National Traffic Safety Administration Student Manual on DWI Detection indicates that speeds of ten miles per hour or more below the speed limit can be a basis for suspecting an impaired driver. She further testified that she had been trained that it was commonplace for an impaired driver to fluctuate speeds, "driving slowly and then speed[ing] up." She also indicated that rapid acceleration, not required by road conditions, was another indicator of impairment. She stated that she believed the fluctuations were viewable on the videotape,

particularly the rapid acceleration immediately prior to the stop, but, after viewing the tape acknowledged that "it's debatable."

The defendant also testified at the motion to suppress hearing and stated that, because Deputy Lawson was following him, he looked through his rearview mirror more frequently than he ordinarily would because "it's general nature to get nervous when a cop is behind you." He further stated that, as a result, he was not paying as much attention as he should have been. On cross-examination, he was asked if he was "nervous" because he was impaired, and he responded, "I think I need to plead the Fifth."

## Analysis

In this appeal, the defendant seeks review of the following certified question of law: "whether reasonable suspicion, based upon specific and articulable facts, existed to authorize a stop of the defendant's vehicle by the Blount County Sheriff's Department on May 29, 2006."

## I. Certified Question of Law

Rule 37(b)(2)(I), Tennessee Rules of Criminal Procedure, allows an appeal from a guilty plea in certain cases under very narrow circumstances. An appeal lies from a guilty plea, pursuant to Rule 37(b)(2)(I), if the final order of judgment contains a statement of the dispositive certified question of law reserved by the defendant, wherein the question is so clearly stated as to identify the scope and the limit of the legal issues reserved. *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The order also must state that the certified question was expressly reserved as part of the plea agreement, that the State and the trial judge consented to the reservation, and that the State and the trial judge are of the opinion that the question is dispositive of the case. *Id.* An issue is dispositive when this court must either affirm the judgment or reverse and dismiss. *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). If these circumstances are not met, this court is without jurisdiction to hear the appeal. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). Having viewed the record before us, we determine that the certified question is dispositive and that all required prerequisites to review are present. Accordingly, we examine the merits of the defendant's issue.

## II. Motion to Suppress

An appellate court, when evaluating the correctness of the trial court's ruling on a motion to suppress, is required not only to consider the evidence that was before the trial court at the hearing on the motion, but it should also consider the entire record. In reviewing the issue on appeal, a trial court's findings of fact will be upheld unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *see also State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23. Furthermore, "questions of credibility of the witnesses,

the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* However, this court reviews the trial court's application of the law to the facts under a *de novo* standard of review without any deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

The Fourth Amendment to the United States Constitution guarantees that "the right of the people to be secure . . . against unreasonable searches and seizures shall not be violated and no warrants shall issue, but upon probable cause." Likewise, Article I, Section 7 of the Tennessee Constitution guarantees "that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures . . . ." Thus, the language of both the federal and state constitutions mandates that "a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022 (1971)); *see also State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003).

Though a warrant is normally required when a police officer intrudes upon the privacy of a citizen, there are exceptions to the warrant requirement. *Garcia*, 123 S.W.3d at 343. One exception exists "when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 1880 (1968). Determining whether reasonable suspicion existed in a particular traffic stop is a fact-intensive and objective analysis. *Garcia*, 123 S.W.3d at 344. "'In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances.'" *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997) (quoting *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992)); *see also Garcia*, 123 S.W.3d at 344. Included within the totality of the circumstances are the personal observations of the officer and rational inferences and deductions of the trained law enforcement officer. *Watkins*, 827 S.W.2d at 294. Objective standards apply, rather than the subjective beliefs of the officer making the stop. *State v. Norwood*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996).

On appeal, the defendant argues that the trial court erred in denying his motion to suppress because: (1) the defendant's weaving within his own lane did not justify the stop and (2) the officer's testimony regarding the defendant's speed was not proper under Tennessee Rule of Evidence 703 and was improperly relied upon because there was no evidence that the officer's speedometer had been calibrated accurately. He contends that the evidence presented establishes that Deputy Lawson lacked reasonable suspicion to justify the stop.

In denying the motion to suppress, the trial court made the following findings of fact:

> The Court finds that the officer had a reasonable suspicion, under the totality of the circumstances, to make the traffic stop, under her suspicion that the driver was

under the influence. Specifically, the Court finds that the Defendant's vehicle drifted within its single lane of travel, touching the lines on occasion. And that's all subject to review in the videotape that's been admitted into evidence. But the Court further finds that the officer, Officer Lawson, was a credible witness and observed fluctuation in the speed of the vehicle that she judged to be unusual for the circumstances that the Defendant was driving; specifically, late at night, four-lane road, no other vehicles in sight, relatively straight highway. Her observation that the vehicle fluctuated in speed between 45 miles an hour and 59 miles an hour, combined with the visual observation which we can share to a certain extent on the videotape, and based on the Court's judgment of her credibility as a witness as to that fluctuation of speed which we can't see as well because we weren't there - - given that totality of the circumstances, the Court finds that there was reasonable suspicion for her to stop the Defendant, and so overrules the Motion to Suppress.

. . . .

I think that the fluctuation in the speed was the basis for her reasonable suspicion and the basis of the stop. And it also happens to be the finding upon which the Court, were it just for the weaving or the drifting - - whatever we want to use - - the Court might not be ruling the same way. It's the combination of the drifting, together with the speed fluctuation that the officer observed.

An initial argument asserted by the State is that reasonable suspicion was not necessary, as probable cause itself supported the stop because Deputy Lawson testified that the defendant was exceeding the posted speed limit by eight or nine miles per hour, thus violating Tennessee Code Annotated sections 55-9-103 and 55-8-152 (2006), which prescribe that it is a Class C misdemeanor to drive on a roadway at a speed greater than the posted speed limit. The State asserts that this violation alone is sufficient to support the stop, despite the fact that Deputy Lawson specifically testified that she did not initiate the stop because the defendant was speeding. In support of its argument, the State relies upon *Michael A. Whren and James L. Brown v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996). We note that the same argument was advanced by the State at the motion to suppress hearing, but the trial court declined to rule on the argument.

In *Whren*, the Court held that there is no constitutional violation if there is a valid reason for a traffic stop even if the officer may have other motives as a pretext for the stop. *Id*. at 810, 116 S. Ct. at 1772. It is well-settled that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* The court in *Whren* also stated that whether a traffic stop is reasonable does not depend on the motivation of the officer. *Id*. at 813; 116 S. Ct. at 1774. If the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine or at his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

However, the argument advanced by the State expands the holding in the *Whren* case and asks us to apply it in the reverse. In *Whren*, the officer observed a traffic violation and, relying upon that traffic violation, stopped the vehicle for the pretextual purpose of searching for drugs. The holding merely stands for the proposition that as long as an officer stops a vehicle for a valid violation, relying upon that violation, then the true motivation is not relevant. That situation did not occur in the instant case. Deputy Lawson specifically stated that she did not stop the vehicle for the speeding violation. If she had stated that the speeding was a factor in the stop, we would agree that probable cause existed and supported the stop, regardless if she actually also suspected a DUI. However, the State may now not rely upon the speeding violation to support a finding of probable cause when it was not a factor in the decision to stop the defendant's vehicle. Thus, the question before us now is whether reasonable suspicion existed that the defendant was driving under the influence.

As noted, the trial court based it finding of reasonable suspicion upon the "combination of the drifting, together with the speed fluctuation." The defendant disputes that either support a finding of reasonable suspicion. With regard to the reliance upon the finding of "drifting" or "weaving" within his own lane of traffic, the defendant relies upon *Binnette*. In *Binnette*, the court noted that, "'[i]f the failure to follow a perfect vector down the highway . . . [was a] sufficient reason to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." 33 S.W.3d at 219. The court went on to note the danger of finding reasonable suspicion under the facts of that case would "[i]n essence . . . create[] a 'stop at will' standard for police since it is the rare motorist indeed who can travel for several miles without occasionally varying speed unnecessarily, moving laterally from time to time in the motorist's own lane, nearing the center line or shoulder[,] or exhibiting some small imperfection in his or her driving." *Id*. at 219-20. The court held that the "number of times that a vehicle touches the center line or drifts within a lane is not dispositive of the issue." *Id*. at 219.

Moreover, *Binnette* also affected the standard of review in motion to suppress cases. The court held that "when a court's findings of fact at a suppression hearing are basely solely on evidence that does not involve issues of credibility, such as the videotape evidence . . . , the rationale underlying a more deferential standard of review is not implicated." *Id*. at 217. The court concluded that the rationale behind this was that, if no issues of credibility are involved, the reviewing court is in the same position as the trial court and is just as capable of reviewing the evidence. *Id*. Thus, the court held that "when a trial court's findings of fact on a motion to suppress are based solely on evidence that does not involve issues of credibility," a reviewing court must examine the record *de novo* without a presumption of correctness. The defendant asserts that in the case before us and asks this court to review the tape *de novo*. Moreover, he asks us to compare this tape to the video in *Binnette*, which he introduced at the suppression hearing, asserting that the defendant's driving is, in fact, better than the driving depicted in *Binnette*, which our supreme court concluded did not support a stop.

However, we disagree that the record should be reviewed *de novo*. As mentioned, the trial court based its ruling not only upon the tape, but also upon testimony given by Deputy Lawson,

which the court specifically found to be credible. The court noted that the videotape showed drifting in a single lane of traffic, which was reviewable on the video. However, the court goes further and makes specific findings regarding Deputy Larson's credibility with regard to her testimony regarding fluctuating speeds, which the court notes cannot be seen "as well" on review "because we weren't there." Thus, this case is distinguishable from *Binnette* in that evidence, other than a video recording, was introduced and relied upon by the trial court in reaching its decision, specifically the credible testimony of Deputy Lawson that the defendant varied his speed from forty-five to fifty-nine miles per house on a relatively straight, four-lane road with little traffic. Moreover, the defendant testified at the hearing that he was not paying sufficient attention because he was nervous that the deputy was behind him. Thus, the defendant himself placed credibility at issue. *See State v. Michael D. Boon*, No. E2006-02320-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Dec. 4, 2007). As such, the presumption of correctness applies.

While we would agree with the defendant and the trial court that the video introduced alone does not evince driving which would support a finding of reasonable suspicion, as it does not show driving which is erratic or haphazard, minor imperfections are visible. Rather the tape shows significant weaving within a single lane of travel and multiple instances of touching the center or fog lines. We would note that the video is lengthy, as Deputy Lawson's camera was running during a significant portion of the period in which she followed the defendant, and we would expect to be able to view the imperfect driving she referenced. However, with the addition of Deputy Lawson's testimony regarding the fluctuations in speed, which the court accredited and noted could not be observed as well from the tape, a finding of reasonable suspicion is supported. She testified that her attention was first gained when the defendant crossed the fog line, thus, traveling outside his lane of travel. In addition to his pattern of "touch[ing] or cross[ing]" both the center and the fog lines, there was weaving within his own lane, which is seen on the tape. Moreover, Deputy Lawson testified that the defendant fluctuated in his speed of travel from forty-five to fifty-nine miles per hour, although noting that this was not clear on the recording. Moreover, she noted a rapid acceleration by the defendant just prior to the stop, rapid enough that she believed the defendant about to flee from pursuit. These factors taken together support a finding of reasonable suspicion.

The defendant's final argument is that the trial court erred in relying upon Deputy Lawson's testimony regarding the fluctuations in speed because it did not satisfy the requirements of Rule 703 of the Tennessee Rules of Evidence and because there was no proof introduced that Lawson's speedometer had been accurately calibrated. We also find this to be without merit. Initially, we note that Rule 703 is not implicated on the facts of this case. In *State v. Woodard Joyner*, No. 02-C-02-9206-CR-00124 (Tenn. Crim. App., at Jackson, May 20, 1992), this court upheld a police officer's ability to give opinion testimony on the speed of a motor vehicle based upon the officer's visual observations, pursuant to Tennessee Rule of Evidence 701, as a lay witness, noting that prior to the adoption of the Rules of Evidence, a lay witness was permitted to give opinion testimony as to the speed of a vehicle based upon the witness's visual observation. *See, e.g., Blackburn v. Murphy,* 737 S.W.2d 529, 532 (Tenn. 1987) ("distances and speed are regularly estimated by lay witnesses"); *Crunk v. Grooms,* 450 S.W.2d 15, 20 (Tenn. App. 1969) ("as a general rule, one does not have to be an expert to estimate the speed of a vehicle in ordinary use"); *Memphis St. Ry Co. v. Scanlon,* 1

Tenn. Civ. App. (Higgins) 679, 697-700 (1911) (opinion of lay witness respecting speed of street car seen by the witness was competent); *Cochran v. Pavise,* 1 Tenn. Civ. App. (Higgins) 1, 3-4 (1910) (the speed of vehicles is a matter about which anyone of ordinary observation and intelligence is permitted to express an opinion). The court found that:

> the trial court properly allowed the deputy to testify how fast the appellant was traveling during the chase. An adequate foundation existed for the admission of this testimony, i.e., the deputy observed the appellant's motor vehicle for one-fourth of a mile; and the deputy was aware of the speed that it took to keep pace with the appellant. In addition, this testimony met the requirements of [Tennessee Rule of Evidence] 701(a). The determination of speed, based upon visual observation, does not require "a special knowledge, skill, experience, or training." Also, a lay witness "cannot readily and with equal accuracy and adequacy communicate what the witness has perceived to the trier of fact without testifying in terms of opinions or inferences." Finally, the deputy's testimony concerning the speed of the vehicle did not mislead the trier of fact to the appellant's prejudice.

*Joyner*, No. 0-2C-01-9106-CR-00124. Moreover, this court has also held that an officer "may properly testify as to the speed with which a suspect is driving based on his or her visual observation of the speed that it took to keep pace with the suspect's vehicle." *Michael D. Boon*, No. E2006-02320-CCA-R3-CD (proof concerning when speedometer was calibrated not necessary to establish reasonable suspicion). Thus, the defendant's argument is without merit.

**CONCLUSION**

Based upon the foregoing, the denial of the motion to suppress is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE