# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 5, 2012 Session

## ZONA MAYO v. DONNA L. SHINE, M.D., ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-654-09      Harold Wimberly, Judge**

_____

**No. E2011-01745-COA-R3-CV-FILED-JUNE 25, 2012**

_____

Zona Mayo[1] ("Plaintiff") sued Donna L. Shine, M.D., Fort Sanders Obstetrical and Gynecological Group, P.C., and Fort Sanders Regional Medical Center ("the Hospital") alleging medical malpractice in connection with Plaintiff's birth. After a jury trial, the Trial Court entered judgment on the jury's verdict finding and holding that neither Dr. Shine[2] nor the Hospital were legally responsible for any harm suffered by Plaintiff. Plaintiff appeals raising issues regarding alleged jury misconduct and alleged errors with regard to admission of evidence, among other things. We find and hold that Plaintiff is entitled to a new trial due to errors in the admission of specific evidence and the improper limitation of Plaintiff's cross-examination of Dr. Shine, among other things. We vacate the Trial Court's judgment and remand this case to the Trial Court for a new trial in compliance with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Joe Bednarz, Sr., Nashville, Tennessee, and Steven R. Walker, Oakland, Tennessee, for the appellant, Zona Mayo.

Rick L. Powers, and Rachel Park Hurt, Knoxville, Tennessee, for the appellee, Fort Sanders Regional Medical Center.

---

[1]Zona Mayo filed suit by and through her guardians, natural parents and next friends, Katherine Mayo and James Mayo.

[2]Dr. Shine and her practice group, Fort Sanders Obstetrical and Gynecological Group, P.C., were treated as one entity for purposes of this trial.

James G. O'Kane, and Raymond G. Lewallen, Knoxville, Tennessee, for the appellees, Donna L. Shine, M.D. and Fort Sanders Obstetrical and Gynecological Group, P.C.

## OPINION

## Background

Plaintiff was born with severe injuries including severe brain injury. Plaintiff's parents filed suit on Plaintiff's behalf against Dr. Shine, Dr. Shine's practice group, and the Hospital alleging medical malpractice. After a jury trial, the Trial Court entered judgment on the jury's verdict finding and holding that neither Dr. Shine nor the Hospital's nurses committed malpractice. Plaintiff filed a motion for new trial, which the Trial Court denied. Plaintiff appeals to this Court.

## Discussion

Although not stated exactly as such, Plaintiff raises several issues on appeal: 1) whether Plaintiff was denied a fair trial due to juror misconduct; 2) whether the Trial Court erred in allowing evidence to be presented to the jury that Plaintiff's mother returned to Dr. Shine for medical care for a subsequent pregnancy; 3) whether the Trial Court erred in restricting Plaintiff's cross-examination of Dr. Shine; 4) whether the Trial Court erred by making potentially disparaging comments about Plaintiff's case in front of the jury; 5) whether the Trial Court erred in allowing references to the fact that Plaintiff's counsel was from Maryland after the Trial Court had granted Plaintiff's motion in limine to prevent such information from being presented to the jury; 6) whether the Trial Court erred in allowing Lowell McCauley, M.D. to express standard of care opinions on behalf of the Hospital's nurses; and, 7) whether the Trial Court erred in limiting the time allowed for Plaintiff's opening statement.

We first consider whether Plaintiff was denied a fair trial due to juror misconduct. In support of her motion for a new trial Plaintiff filed the affidavits of two jurors. One of these juror affidavits stated, in pertinent part:

> 3. During deliberations, … juror #10, handed me an article regarding children with cerebral palsy.

> 4. It was my understanding, from Judge Wimberly's directions, that the only information we were to consider was the evidence that was presented in the

courtroom during trial. I, therefore, told [juror #10] that I was not interested in reading the article and handed it back to him.

The other juror affidavit stated, in pertinent part:

3. During our deliberation a male juror whose name I can't recall had some medical literature concerning children with cerebral palsy and he wanted to discuss that literature with members of the jury.

4. A female juror whose name I also can't recall told him that she did not want to discuss that literature because we were not suppose [sic] to.

5. It was obvious to me that this male juror had performed some independent research and he wanted to share it with the rest of the jury.

Plaintiff did not produce either an affidavit of juror #10 or the allegedly prejudicial article that juror #10 wanted to discuss with the other jurors.

In *Patton v. Rose*, a medical malpractice case in which the jury had been exposed to a newspaper article alleged to have effected its verdict, this Court explained:

Although jurors are permitted to weigh the evidence in light of their own knowledge and experience, their verdict must be based on the evidence introduced at trial. *Caldararo v. Vanderbilt University*, 794 S.W.2d 738 (Tenn. App. 1990). Obviously, a verdict of a jury based on something other than the evidence introduced at trial is improper and should not be allowed to stand. However, in order to be granted a new trial due to such jury misconduct, there must be admissible evidence on the issue. Admissibility of evidence from jurors is controlled by Tenn. R. Evid. 606(b), which states:

(b) Inquiry into Validity of Verdict or Indictment. – Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the jury's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or

-3-

whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Clearly, the newspaper article is extraneous information, *Caldararo*, 794 S.W.2d at 742, but whether it is prejudicial information is another matter. Moreover, and probably most importantly, the extraneous prejudicial information must have influenced the jury's verdict. We are not convinced from reading the article in question that it would be prejudicial to plaintiff; to the contrary, it could actually have the opposite effect. It is clear from this record, however, that there is absolutely no evidence that the jury considered this article in their deliberation, nor is there any evidence that the article itself influenced the deliberations of the jury. The affidavit in question was presented by an alternate juror who merely observed the extraneous information in the presence of the jury prior to the deliberations, and there is nothing in the record to indicate that the jury used the extraneous information in any manner in reaching its verdict.

*Patton v. Rose*, 892 S.W.2d 410, 413-14 (Tenn. Ct. App. 1994). "[C]lear and convincing evidence of prejudice is required to meet the standards of Tennessee Rules of Evidence 606(b)," and the burden is on the appellant to prove prejudice. *Whiteside v. Hedge*, No. E2004-02598-COA-R3-CV, 2005 Tenn. App. LEXIS 312, at *7 (Tenn. Ct. App. May 26, 2005), *no appl. perm. appeal filed*.

Plaintiff argues in her reply brief on appeal that our Supreme Court has stated: "when it has been shown that a juror was exposed to extraneous prejudicial information or subjected to improper influence, a rebuttable presumption of prejudice arises, and the burden shifts to the State to explain the conduct or demonstrate that it was harmless," and, therefore, the burden should be shifted to Defendants to rebut the presumption of prejudice. *Walsh v. State*, 166 S.W.3d 641, 647 (Tenn. 2005). What Plaintiff has failed to recognize, however, is that it first must be shown that a juror was exposed to extraneous *prejudicial* information or subjected to improper influence before the burden shifts to the other side to prove that such information or influence was harmless.

Plaintiff did not produce the article which she claims constituted the extraneous prejudicial information. Nor did Plaintiff produce an affidavit of juror #10 who allegedly read the article and then tried to discuss the article with other jurors. All we know about the article, and all the Trial Court knew, is what was stated in the affidavits of the two jurors who

-4-

refused to read the article. We will not presume that the article contained prejudicial information simply because it allegedly concerned children with cerebral palsy. Plaintiff has not shown that the alleged extraneous information was prejudicial. Thus, the burden did not shift to Defendants.

Plaintiff also argues in her briefs on appeal that the alleged extraneous information constituted medical literature, which would be hearsay. Again, the content of the article is as unknown to this Court as it was to the Trial Court, and we will not assume that it constituted medical literature simply because it is asserted that the article concerned children with cerebral palsy. As discussed above, we know nothing whatsoever about the substance of the article.

Because we know nothing about the article, we are unable to find that the article was prejudicial, and, therefore, no rebuttable presumption of prejudice arises. Furthermore, the two juror affidavits show that these jurors did not read and refused to discuss the article. Plaintiff failed to show that the jury used the extraneous information contained in the article in any manner in reaching its verdict. As such we are constrained to find that there is no reversible error with regard to this issue.

We next consider whether the Trial Court erred in allowing evidence to be presented to the jury that Plaintiff's mother returned to Dr. Shine for medical care for a subsequent pregnancy. "The appellate court affords the trial court wide discretion regarding the admissibility of evidence and will not overturn the trial court's determination absent an abuse of that discretion." *Goodale v. Langenberg*, 243 S.W.3d 575, 587 (Tenn. Ct. App. 2007).

As pertinent to this issue, Tenn. R. Evid. 401 provides:

**Rule 401. Definition of "relevant evidence."** – "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Tenn. R. Evid. 401. Tennessee Rule of Evidence 403 provides:

**Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** – Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence.

Tenn. R. Evid. 403.

The fact that Plaintiff's mother returned to Dr. Shine for medical care for a subsequent pregnancy was mentioned by Dr. Shine's attorney during opening statements. Plaintiff then argued during a jury-out hearing that this fact was irrelevant and extremely prejudicial and requested that the Trial Court not allow cross-examination about this fact. The Trial Court ruled that this evidence was admissible. Plaintiff's counsel then questioned Plaintiff's mother about her return to Dr. Shine during Plaintiff's case-in-chief.

We agree with Plaintiff that the fact that Plaintiff's mother returned to Dr. Shine after Plaintiff's birth is irrelevant to the issue of whether the defendants, and specifically Dr. Shine, committed medical malpractice in connection with Plaintiff's birth. As such, it was error to admit this evidence. Furthermore, even if the evidence that Plaintiff's mother returned to Dr. Shine might somehow be even slightly relevant to the issues involved in this suit, the probative value of this evidence is substantially outweighed by the danger of unfair prejudice.

Defendants cite to several unreported cases from the Court of Criminal Appeals in support of their argument that Plaintiff waived this issue by introducing the evidence during the direct examination of Plaintiff's mother. These cases from the Court of Criminal Appeals each dealt with a situation in which a criminal defendant was questioned on direct examination about previous criminal convictions, and the Court of Criminal Appeals found that the defendant had waived the right to appeal the admissibility of that evidence. As these cases from the Court of Criminal Appeals involved an issue of the admissibility of evidence of previous criminal convictions, evidence that is governed specifically by particular rules of evidence which we need not discuss here, we find these cases are distinguishable from the instant case.

Plaintiff objected to the introduction of the evidence concerning the fact that Plaintiff's mother returned to Dr. Shine and the Trial Court ruled that the evidence was admissible. This ruling left Plaintiff's counsel between a rock and a hard place, so to speak. Plaintiff had to make the forced tactical decision of whether to attempt to diffuse the prejudicial information by introducing it herself, or to wait until the evidence was elicited on cross-examination and then attempt to do damage control. Plaintiff, faced with no real choice, introduced the information. We also note that the jury had been told by Dr. Shine's attorney in his opening statement that Plaintiff's mother had returned to Dr. Shine for medical care for a subsequent pregnancy. While we are fully aware that the attorneys'

statements are not evidence, the jury had been put on notice by Dr. Shine's attorney that evidence of this fact would be presented to them. We do not find that Plaintiff waived her right to object on appeal to the admission of this evidence by making this forced tactical decision.

Nor do we find the introduction of this highly prejudicial evidence to have been harmless error. Rather, we find that the introduction of this evidence, especially when considered along with other trial errors as discussed in this Opinion, more probably than not effected the judgment and constitutes reversible error. *See* Tenn. R. App. P. 36 (stating "A final judgment … shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment .…").

Next we consider whether the Trial Court erred in restricting Plaintiff's cross-examination of Dr. Shine. As this Court explained in *Overstreet v. Shoney's*:

> Lawyers and judges regard cross-examination as an essential safeguard of the accuracy and completeness of testimony. *See* 1 *McCormick on Evidence* § 19, at 78 (John W. Strong ed., 4th Practitioner's ed. 1992). It enables the trier-of-fact to assess a witness's demeanor, sincerity, and ability to perceive, recall, or narrate past events. See Neil P. Cohen, et al., *Tennessee Law of Evidence* § 607.3, at 338 (3d ed. 1995). Its purpose is to adduce from a witness any information that may clarify, qualify, or undercut a witness's testimony on direct examination, impair its effectiveness, or affect the inferences the trier-of-fact might draw. See Roberto Aron, et al., *Cross-Examination of Witnesses* § 2.06 (1989) (quoting Professor Anthony G. Amsterdam).

> Lawyers should be accorded wide latitude in cross-examining witnesses. *See Crunk v. Grooms*, 60 Tenn. App. 611, 620, 450 S.W.2d 15, 20 (1969); *Union Traction Co. v. Todd*, 16 Tenn. App. 200, 208, 64 S.W.2d 26, 30 (1933). However, despite its salutary purpose, cross-examination is subject to reasonable limitations to prevent obstruction of the orderly progress of a trial. These limitations are left to the trial court's discretion. *See Edwards v. State*, 221 Tenn. 60, 66, 424 S.W.2d 783, 786 (1968); *Austin v. City of Memphis*, 684 S.W.2d 624, 631 (Tenn. Ct. App. 1984); *Wagner v. Niven*, 46 Tenn. App. 581, 598, 332 S.W.2d 511, 519 (1959). Thus, the trial court may use its discretion to prevent lawyer misconduct, *see* Tenn. R. Evid. 611(a), to avoid unfair prejudice, confusion, or waste of time, *see* Tenn. R. Evid. 403, and to ensure compliance with other applicable rules of evidence and procedure.

* * *

Tennessee has long recognized the "English rule" which permits the scope of cross-examination to exceed the scope of the witness's direct examination. *See Sands v. Southern Ry.*, 108 Tenn. 1, 9, 64 S.W. 478, 480 (1901); *Ray v. Hutchison*, 17 Tenn. App. 477, 483, 68 S.W.2d 948, 952 (1933). Thus, litigants may prove elements of their own case during the cross-examination of their opponent's witnesses. These common-law precedents are now embodied in Tenn. R. Evid. 611(b) which states, in part, that "[a] witness may be cross-examined on any matter relevant to any issue in the case."

*Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 708-09 (Tenn. Ct. App. 1999).

During her case-in-chief, Plaintiff introduced portions of the videotaped deposition of Dr. Shine. Later during the trial Dr. Shine took the stand and testified. Shortly into Plaintiff's counsel's cross-examination of Dr. Shine, the Trial Court wanted to know what was "the point of doing this again?" because the doctor had already "been presented in response to questions asked on behalf of the plaintiff." Plaintiff's counsel asserted that he had the right to cross-examine Dr. Shine, and the Trial Court stated that Plaintiff could have "about 30 minutes" to do so. Apparently the Trial Court's reason for imposing this limitation of thirty additional minutes was that portions of Dr. Shine's deposition presented in Plaintiff's case-in-chief covered the same areas Dr. Shine was being questioned about on cross-examination.

Plaintiff argues on appeal that the Trial Court erred in severely limiting "the extent of Plaintiff's cross-examination." We agree. Plaintiff had the right to adduce from Dr. Shine on cross-examination "any information that may clarify, qualify, or undercut [Dr. Shine's] testimony on direct examination, impair its effectiveness, or affect the inferences the trier-of-fact might draw," within reasonable limits. *Id*. at 708.

Dr. Shine is a party defendant in a complex medical malpractice action, and it was unreasonable given the facts and circumstances of the case to set the limit of an additional thirty minutes on Plaintiff's cross-examination of Dr. Shine. The fact that Plaintiff had introduced portions of Dr. Shine's videotaped deposition during her case-in-chief was immaterial. The cross-examination of a witness, especially a witness who is a party to the lawsuit, is not the same thing as presenting a portion of that witness's deposition in the case-in-chief. Cross-examination of a party witness serves a very different purpose from that of introducing evidence in a party's case-in-chief. The primary purpose of a plaintiff's cross-examination of a party defendant is not to prove the elements of the plaintiff's cause of action, but rather to "clarify, qualify, or undercut [the party defendant's] testimony on direct

-8-

examination, impair its effectiveness, or affect the inferences the trier-of-fact might draw." *Id.* at 708.

Our careful and thorough review of the record on appeal reveals no valid reason for so severely limiting Plaintiff's cross-examination of Dr. Shine in the manner that the Trial Court did. Given the complexity of this trial and the complex factual issues that were being placed before the jury, the Trial Court's limitations on the cross-examination of Dr. Shine simply were not necessary "to prevent obstruction of the orderly progress of [this] trial." *Id.* We, therefore, hold that it was error to limit Plaintiff's cross-examination of Dr. Shine in the manner and extent that the Trial Court did.

On a related note, we turn to the issue of whether the Trial Court erred by making potentially disparaging comments about Plaintiff's case in front of the jury. During the exchange between Plaintiff's counsel and the Trial Court about the cross-examination of Dr. Shine and in the jury's presence, the Trial Court stated: "Well, why did you waste two hours of our time playing questions that you're going to ask of her before?" Plaintiff asserts on appeal that this comment about wasting time was "implying (if not asserting outright) that the minor Plaintiff's claims were a 'waste' of the Court's and the jury's time." We agree. At a minimum, the Trial Court's comment, however unintentionally, implied that Plaintiff's counsel's questions and, therefore, also the witness's answers to those questions, were a waste of time and unimportant. While this comment alone may not have risen to the level of reversible error, it was potentially prejudicial and, when considered together with the other errors as discussed in this Opinion, resulted in the Plaintiff being denied a fair trial.

We next consider whether the Trial Court erred in allowing references by the Hospital's counsel to the fact that Plaintiff's counsel was from Maryland after the Trial Court had granted Plaintiff's motion in limine to prevent such information from being presented to the jury. A careful and thorough review of the record on appeal reveals instances in which defense counsel pointed out that Plaintiff's counsel was from out of state. For instance, when Plaintiff's mother was questioned, the following exchange occurred:

Q. Okay. You contacted the firm of Dugan, Babij and Tolley; is that correct?

A. That's correct.

Q. And they're from Baltimore, Maryland?

A. Yes, sir.

Q. You got their names off the Internet, maybe?

A. I did.

In similar fashion, when defense expert Susan Drummond, R.N. was questioned the following exchange occurred:

Q. Okay. Come back to where we started with the first question. Based on all the questions I have asked you - - and you have been deposed by Mr. Babij over here, correct?

A. Yes?

Q. This is Mr. Babij over here at the end of the table.

A. I had not seen him, yes.

Q. You were at Vanderbilt with me and Mr. Babij was in Maryland somewhere?

A. Yes.

Both of these exchanges served no purpose other than to point out to the jury the irrelevant fact that Plaintiff's counsel practiced in Maryland, not Tennessee, and both exchanges were potentially prejudicial and in violation of the Trial Court's grant of the motion in limine. As such, we find it was error to allow these references. Upon remand, all parties are instructed to comply with the Trial Court's ruling on the motion in limine and refrain from making any statements or asking any questions which point out to the jury the irrelevant fact that Plaintiff's counsel is from out of state.

Next we turn to the issue of whether the Trial Court erred in allowing Lowell McCauley, M.D. to express standard of care opinions on behalf of the Hospital's nurses. In *Stanfield v. Neblett* this Court explained:

Pursuant to Rule 37.03 of the Tennessee Rules of Civil Procedure, the trial court may exclude an expert's testimony when the opposing party asserts that the expert did not disclose an opinion in his or her Rule 26 expert disclosures. "Exclusion is proper only if the disclosures failed to give the opposing side reasonable notice of the opinions such that, without exclusion, there would be unfair surprise or trial by ambush." *Watkins v. Affiliated Internists, P.C.*, No. M2008-01205-COA-R3-CV, 2009 WL 5173716, *20 (Tenn. Ct. App. Dec. 29,

2009)(citations omitted). The decision to exclude an expert's testimony under Rule 37.03 rests within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *Id.*

*Stanfield v. Neblett*, 339 S.W.3d 22, 30 (Tenn. Ct. App. 2010).

Prior to trial, Dr. Shine filed Rule 26 disclosures which stated that she intended to call Lowell L. McCauley, Jr., M.D. as an expert witness and that Dr. McCauley was expected to offer opinions with regard to Dr. Shine's care and treatment. Nowhere in Dr. Shine's Rule 26 disclosures does it state that Dr. McCauley would offer opinions with regard to the standard of care of the Hospital's nurses.

The Hospital filed Rule 26 disclosures in which it identified several experts and then stated that it "adopt[ed] the expert disclosures by the co-defendant, Dr. Shine, as if fully copied verbatim herein." The Hospital did not supplement its Rule 26 disclosure after the deposition of Dr. McCauley was taken.

At trial, Dr. McCauley was asked by the Hospital's counsel on cross-examination if he was familiar with the nursing standard of care. Plaintiff's counsel asked to approach the bench and a sidebar out of hearing of the jury was held. Unfortunately, the record contains only the notation that a sidebar was conducted out of hearing of the jury and the transcription of the Trial Court stating "I disagree." It appears that perhaps Plaintiff was raising an objection to Dr. McCauley testifying about the nursing standard of care and that the Trial Court overruled this objection. It is unclear, however, the basis of Plaintiff's objection, if indeed Plaintiff was objecting. As such, Plaintiff's objection was not properly preserved.[3]

Because the issue was not properly preserved, we cannot find this to be reversible error. As we are remanding this case for a new trial based upon other grounds, however, we will address this issue in order to give guidance to the Trial Court and the parties upon remand. Rule 26.02(4) of Tenn. R. Civ. P. provides, in pertinent part:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial,

---

[3]Plaintiff asserts that she was not required to make a contemporaneous objection because a motion in limine had been filed on the subject of limiting expert testimony to opinions previously disclosed. We note, however, that defendant Dr. Shine filed that motion in limine, not Plaintiff. Plaintiff may not rely upon another party's objection or motion in limine to preserve error without expressly joining in the objection or motion on the record.

to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion....

Tenn. R. Civ. P. 26.02(4). Moreover, Tenn. R. Civ. P. 26.05 provides, in pertinent part:

(1) A party is under a duty seasonably to supplement the party's response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters; and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of that testimony.

(2) A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which the party (A) knows that the response was incorrect when made; or (B) knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

Tenn. R. Civ. P. 26.05.

As this Court explained in *Buckner v. Hassell*:

Although the Tennessee Rules of Civil Procedure do not specify a sanction to be imposed when a party fails to identify an expert witness in her discovery answers, our Supreme Court found that "the inherent power of trial judges permits the trial judge to take appropriate corrective action against a party for discovery abuse." *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988) (citing *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981)). A trial judge's exclusion of expert witness testimony is subject to an abuse of discretion review by this Court. *Id*. (citing *Brooks v. United Uniform Co.*, 682 S.W.2d 913 (Tenn. 1984)). The *Lyle* court went on to find that exclusion of an expert witness' testimony may be an appropriate sanction for a party's failure to name the expert witness but stated that "other sanctions may be appropriate where the failure to name an expert witness is not knowing and deliberate." *Id*. In reviewing the inquiry that trial judges should make when determining the appropriate sanction, the *Lyle* court set forth the following considerations:

1. The explanation given for failure to name the witness;

-12-

2. The importance of the testimony of the witness;

3. The need for time to prepare to meet the testimony; and

4. The possibility of a continuance.

*Id*. (citing *Strickland*, 618 S.W.2d at 501).

*Buckner v. Hassell*, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000).

Defendants in their joint brief on appeal argue, in part, that Dr. McCauley's opinions on the standard of nursing care should be admissible because they were elicited during cross-examination by the Hospital's attorney. This argument is disingenuous. "Cross-examination is not, however, a 'universal solvent' that somehow renders all evidence admissible. *See* IIIA John H. Wigmore, *Evidence* § 878, at 648 (Chadbourne rev. 1970). Substantive evidence introduced during cross-examination must comply with the same requirements as evidence introduced during direct examination." *Overstreet v. Shoney's*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

The Hospital did not identify Dr. McCauley as one of its experts on the standard of nursing care, nor did the Hospital seasonably amend its disclosures to include this information. The Hospital, however, did in its Rule 26 disclosures "adopt[] the expert disclosures by the co-defendant, Dr. Shine, …." Those adopted expert disclosures did not state that Dr. McCauley was expected to offer any opinion with regard to the nursing standard of care and whether the Hospital's nurses complied with that standard of care. As the Hospital adopted Dr. Shine's expert disclosures as to Dr. McCauley, the Hospital's argument that it was simply eliciting this information on cross-examination of a witness is unpersuasive. Dr. McCauley was not properly disclosed as an expert on the standard of nursing care and whether the Hospital's nurses complied with that standard of care.

Finally, we consider whether the Trial Court erred in limiting the time allowed for Plaintiff's opening statement. As this Court has explained:

Opening statements "are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts each party intends to prove." *Harris v. Baptist Memorial Hospital*, 574 S.W.2d 730, 732 (Tenn. 1978). "Trial courts have wide discretion in controlling arguments of counsel, including opening statements.…" *State v. Johnson*, No. W2004-00464-CCA-R3-CD, 2005 WL 645165, *14 (Tenn. Crim. App. March 15, 2005)(citing *State v. Sutton*, 562 S.W.2d 820, 823

-13-

(Tenn. 1978)). Accordingly, this Court reviews the trial court's decisions on arguments under an abuse of discretion standard. *Id*. "A trial court should provide both parties the opportunity to present their case and the facts upon which they intend to rely, so long as those facts are deemed likely to be supported by admissible evidence." *Id*. (citing *State v. Stout*, 46 S.W.3d 689, 713 (Tenn. 2001)).

*Stanfield*, 339 S.W.3d at 41-42.

Plaintiff argues in her brief on appeal that twenty minutes was insufficient "to adequately explain her case to the jury." Plaintiff also argues in her brief that "[h]aving limited Plaintiff to just twenty minutes, the Trial Court thereafter allowed counsel for Defendants a total of forty minutes to present their opening statements, notwithstanding the fact that their defenses were openly in concert and accord with one another." (footnotes omitted).

We note that a review of the record on appeal reveals that the Trial Court did allow Plaintiff's counsel some extra time to complete his opening statement after he had exceeded the time allowed. Furthermore, although Dr. Shine and the Hospital may have presented defenses that appeared to be "in concert and accord with one another," they could just as easily have presented defenses in opposition to one another's interests or perhaps applicable only to one of the defendants. As such, we do not find that the fact that each defendant was allowed the same amount of time as Plaintiff was allowed to have been prejudicial to Plaintiff in any manner. While this case is a complex medical malpractice case, we find no abuse of discretion in the Trial Court's decision to limit the parties' opening statements in the manner it did. This issue is without merit.

The combined errors of allowing the introduction of irrelevant evidence regarding Plaintiff's mother's return to Dr. Shine, severely limiting Plaintiff's cross-examination of Dr. Shine, making potentially disparaging comments about Plaintiff's case, and allowing irrelevant references to the fact that Plaintiff's counsel was from out of state resulted in Plaintiff being denied a fair trial. As such, we vacate the Trial Court's judgment and remand this case for a new trial in compliance with this Opinion.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for further proceedings, including a new trial, in compliance with this Opinion. The costs on appeal are assessed one-half against the appellee, Fort Sanders Regional

Medical Center; and one-half against the appellees, Donna L. Shine, M.D., and Fort Sanders Obstetrical and Gynecological Group, P.C.

_____
D. MICHAEL SWINEY, JUDGE